# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

# TAMPA DIVISION

| | |
|---|---|
| ERIC GEROW,<br><br>    Plaintiff,<br><br>vs.<br><br>GOVERNOR GAVIN NEWSOM,<br><br>CALIFORNIA STATE SENATE,<br><br>SENATOR TONI ATKINS,<br><br>CALIFORNIA STATE ASSEMBLY,<br><br>ERIKA CONTRERAS, SHERON<br><br>VIOLINI, FRED ZERMENO,<br><br>CALIFORNIA DEPARTMENT OF<br><br>JUSTICE, ATTORNEY GENERAL ROB<br><br>BONTA, CALIFORNIA STATE<br><br>TRANSPORTATION AGENCY,<br><br>SECRETARY TOKS OMISHAKEN,<br><br>CALIFORNIA HIGHWAY PATROL, | Case No. 8:22-cv-2976-MSS-JSS<br><br>Hon. Mary S. Sciven<br><br>PERMANENT INJUNCTIVE RELIEF<br><br>REQUESTED. DECLATORY RELIEF<br><br>REQUESTED. DEMAND FOR JURY<br><br>TRIAL. CHALLENGE TO THE<br><br>CONSTITUTIONALITY OF ARTICLE<br><br>XIII SECTION 32 OF CALIFORNIA<br><br>STATE CONSTITUTION AND<br><br>CALIFORNIA GOV. CODE § 15670 |

AMANDA RAY, WARREN STANLEY,
CALIFORNIA GOVERNMENT
OPERATIONS AGENCY, AMY TONG,
MARYBEL BATJER, CALIFORNIA
STATE CONTROLLER, BETTY YEE,
RICHARD CHIVARO, SHAWN
SILVA, YVETTE STOWERS,
CALIFORNIA DEPARTMENT OF
FINANCE, JOE STEPHENSHAW,
KEELY BOSLER, ESTELLA
SIMONEAU, ANTONIO VASQUEZ,
MALIA COHEN, VIKRAM MANDLA,
CALIFORNIA FRANCHISE TAX
BOARD, SELVI STANISLAUS, JOZEL
BURNETT, MARGEURITE
ESQUIVIDO, ERIK SCHEIDEGGER,
BRENDA VOET, CALIFORNIA
DEPARTMENT OF GENERAL
SERVICES, ANA LASSO,
NICK WAGNER, LITTLE HOOVER

2

COMMISSION, CALIFORNIA STATE

AUDITOR, CALIFORNIA OFFICE OF

TAX APPEALS, ANNE MARIE

SCHUBERT, FEDERAL BUREAU OF

INVESTIGATION,

DEPARTMENT OF HOMELAND

SECURITY, U.S. DEPARTMENT OF

JUSTICE, U.S. ATTORNEY PHILIP A.

TALBERT, TIMOTHY JOHNSTONE

VICTOR KEESEY, NICOLE

SOLANDER, JANE OR JOHN DOES 1-

100

      Defendants, in their personal and

professional capacities

## PLAINTIFF ERIC GEROW'S  AMENDED COMPLAINT FOR INJUNCTIVE, MONETARY AND DECLARATORY RELIEF

Plaintiff, Eric Gerow, brings this Complaint for Injunctive, Monetary, and Declaratory Relief (the "Complaint") against Defendants, and each of them, as follows:

## JURISDICTION AND VENUE

This Court has Federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331. The Complaint alleges violations of Constitutional rights guaranteed by the 1st Amendment, 4th Amendment, 5th Amendment, 6th Amendment, 8th Amendment, and 14th Amendment of the U.S. Constitution. The Complaint further alleges violations of the Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause") and Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder").

This Court also has Federal question jurisdiction as the Complaint alleges violations of Federal statutes including the Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights"); 18 U.S.C. § 241 et seq. ("Conspiracy against Rights"), 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law"), 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act"), 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television"),  18 U.S.C. § 1341 et seq. ("Mail Fraud"), 18 U.S.C. § 1344 et. seq. ("Bank Fraud"), 18 U.S.C. § 371 et. seq. ("Conspiracy"), 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods"), 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys"), 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes"), and 18 U.S.C. § 1951 et. seq. (the "Hobbs Act").

4

In addition to the above, this court also has jurisdiction over claims made against the named Federal defendants in this action under the Federal Tort Claims Act (FTCA).

This Court also has diversity of citizenship jurisdiction as the Plaintiff enjoys different citizenship than each and all Defendants, and the amount in controversy exceeds the statutory amount pursuant to 28 U.S.C. § 1332.

This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 as these claims arise from the same common nucleus of operative facts from which the Federal claims arise.

This Court has jurisdiction over Plaintiff's claims under 5 U.S.C. § 702, "Right of Review."

For declaratory relief sought, venue is proper under the Declaratory Judgement Act 28 U.S.C. § 2201(a).

Venue is properly laid under 28 U.S.C. § 1391 (b) (2) and (b) (3) and, in the case of the Federal defendants, 28 U.S.C. § 1391(e)(1). Non-Federal defendants are joined as parties under 28 U.S.C. § 1391(e)(1).

## THE PARTIES

Plaintiff Eric Gerow is a U.S. citizen and a resident of the State of Florida.

Concerning Defendants, Plaintiff states on information, knowledge, and belief as follows:

5

Defendant Gavin Newsom serves as the Governor of the State of California, an elected office in the State of California.

Defendant California State Senate is a legislative body of the State of California, comprising the upper house of the bicameral State legislature.

Defendant Senator Toni Atkins is a State Senator of the State of California, an elected office, and serves as President Pro Tempore of the California State Senate.

Defendant California State Assembly is a legislative body in the State of California, comprising the lower house of the bicameral State legislature.

Defendant Erika Contreras serves as Secretary of the Senate of the California State Senate and is also a licensed attorney and member of the California State Bar, #260230.

Defendant Sheron Violini served as the Deputy Secretary of Operations of the California State Senate from August 2008 until August 2021.

Defendant Fred Zermeno serves as an employee of the California State Senate in the office of Senator Bob Archuletta.

Defendant California Department of Justice is a State agency of the State of California, the apex law enforcement agency of that State.

Defendant Attorney General Rob Bonta serves as the Attorney General of the State of California, an elected office of the State of California (to which he was appointed, not elected).

Defendant California State Transportation Agency is a State-level agency of the State of California.

Defendant Secretary Toks Omishaken is the Secretary of the California State Transportation Agency, a position appointed by the Governor of California.

Defendant California Highway Patrol is a State level law enforcement agency of the State of California (the equivalent of the "State Police" in other States).

Defendant Commissioner Amanda Ray serves as Commissioner of the California Highway Patrol, a position appointed by the Governor of California.

Defendant Commissioner Warren Stanley is a former Commissioner of the California Highway Patrol, a position appointed by the Governor of California.

Defendant California Government Operations Agency is a State level agency of the State of California.

Defendant Secretary Amy Tong serves as Secretary of the California Government Operations Agency, a position appointed by the Governor of California.

Defendant Marybel Batjer is a former Secretary of the California Government Operations Agency, a position appointed by the Governor of California.

Defendant California State Controller is a State agency of the State of California.

Defendant State Controller Betty Yee serves as the State Controller of the State of California, an elected position, and in this capacity serves as one member of the three-member California Franchise Tax Board.

Defendant Shawn Silva serves as Senior Staff Counsel to the California State Controller.

Defendant Yvette Stowers previously served as the Deputy State Controller for Taxation, a position within the California State Controller's Office.

Defendant Richard "Rick" Chivaro formerly served as Chief Counsel to the California State Controller.

Defendant California Department of Finance is a State agency of the State of California.

Defendant Joe Stephenshaw serves as Director of the California Department of Finance, a position appointed by the Governor and confirmed by the Legislature.

Defendant Director Keely Bosler previously served as Director of the California Department of Finance from 2018 to 2022, a position appointed by the Governor and confirmed by the Legislature.

Defendant Estella Simoneau previously served as "Chief, Administrative Services" for the California Department of Finance.

Defendant Antonio Vasquez serves as a Board Member of the California State Board of Equalization, an elected position, and in this capacity previously served as one member of the three-member California Franchise Tax Board.

Defendant Malia Cohen serves as a Board Member of the California State Board of Equalization, an elected position, and in this capacity serves as one member of the three-member California Franchise Tax Board.

Defendant Vikram Mandla serves as Deputy Attorney General for the State of California, a position within the California Department of Justice. Defendant Mandla is a licensed attorney and member of the State Bar of California, #287101.

Defendant California Franchise Tax Board is a State agency of the State of California.

Defendant Selvi Stanislaus serves as Executive Officer of the California Franchise Tax Board, a position appointed by the Governor and confirmed by the Legislature.

9

Defendant Jozel Burnett serves as Chief Legal Counsel to the California Franchise Tax Board.

Defendant Margeurite Esquivido is an employee of the California Franchise Tax Board.

Defendant Erik Scheidegger is an employee of the California Franchise Tax Board.

Defendant Brenda Voet is an employee of the California Franchise Tax Board.

Defendant California Department of General Services is a state agency of the State of California

Defendant Ana M. Lasso is the Director of the California Department of General Services, a position to which she was appointed by the Governor of California.

Defendant Nick Wagner is an employee of the California Department of General Services, a state agency of the State of California.

Defendant Little Hoover Commission is a State agency of the State of California.

Defendant California State Auditor is a State agency of the State of California.

10

Defendant Office of Tax Appeals is a State agency of the State of California.

Defendant Anne Marie Schubert previously served as the Sacramento County District Attorney, an elected position, in Sacramento County, California.

Defendant Federal Bureau of Investigation is a Federal law enforcement agency headquartered in Washington DC.

Defendant Department of Homeland Security is a Federal law enforcement agency headquartered in Washington DC.

Defendant U.S. Department of Justice is the apex law enforcement agency of the United States, headquartered in Washington DC.

Defendant Philip A. Talbert is the U.S. Attorney for the United States Attorney's Office, Eastern District of California, located in the Sacramento region.

Defendant Timothy Johnstone is an employee of the U.S. Attorney for the United States Attorney's Office, Eastern District of California, located in the Sacramento region.

Defendant Victor "Vic" Keesey is a current or former employee of the Kern County Sherrif's Office detailed to the FBI.

Defendant Nicole Solander is an employee of the Department of Homeland Security (DHS).

11

Defendant Jane or John Does 1-100 are employees, officers, agencies, or entities who have not yet been identified or whose liability has not yet been established.

Each Defendant who is a natural person is named in both their personal and professional capacities.

## INTRODUCTION

This is a civil rights lawsuit. All Defendants who are natural persons are current or former government officials, agencies, or employees.

The California Franchise Tax Board has engaged in serious civil rights abuses of Plaintiff and many others. These abuses stem from systematic and ongoing practices of the California Franchise Tax Board.  They include seizing property without cause, denying citizens due process in violation of the 4th, 5th, 8th and 14th Amendments to the U.S. Constitution, and violating related statutes of Federal and State law.

This Complaint is not about the lawful collection of taxes. Plaintiff does not contest the lawful imposition and collection of taxes, howsoever they may be defined, of any type or description. This is solely a complaint about civil rights abuses and associated violations of law.

This Complaint is an attempt to redress the wrongs done to Plaintiff, but also to instill systematic reform at the California Franchise Tax Board with the goal of protecting the public from further civil rights abuses in the future.

### NO ISSUES OF TAX LAW IN THIS CASE

This is not a case about taxation.  Plaintiff has no dispute whatsoever with the legal imposition and collection of taxes of any type or description. Plaintiff has cheerfully paid any taxes lawfully due of him for many years, and will continue to do so.

Plaintiff is perfectly happy to pay any taxes that he owes whether property tax, sales tax, income tax, capital gains tax, or any other type of tax that Plaintiff may incur.  Plaintiff is not a "tax protester" or any other type of person opposed to the collection of taxes.

Defendants have cited various cases to assert privileges and immunity based on statutes relating to taxation, such as the Tax Injunction Act, the doctrine of comity, Miami Herald Pub. Co. v. City of Hallandale, 734 F2d. 666, 6670 (11th Cir.), and other case law. All case law cited are cases are based on stale case law that has been overturned.  However, the common deonomination in all case law cited by Defendants is that the monies stolen by Defendants from Plaintiff and others are not "tax." It is just stolen money- and therefore the issues in this case

13

are not tax issues, but issues related to theft, conversion, and 4th Amendment violations.

> The Wex legal dictionary defines "tax" as:

> "Tax is any charge of money or property that imposed by a government upon individuals   or entities that are within the government's authority to collect."[1]

The operative phrase is "within the government's authority to collect." If the monies in question are not within the government's authority to collect, or reasonably related to an argument for doing so, they are simply stolen funds. The fact that they were stolen by an agency nominally involved in tax collection, and using that as a fig leaf, makes no difference.

The "seizure of property by [a] State under pretext of taxation when there is no jurisdiction or power to tax is simple confiscation and a denial of  due process of law." Miller Bros., 347 U.S. at 342 (hereinafter "Miller Bros.") Plaintiff contends that the monies stolen by Defendants are "simple confiscation" pursuant to Miller Bros.

Therefore, no argument raised by Defendants that cites any tax law has any relevance to this case, because the monies in question do not meet the definition of "tax" or "taxation." They are just stolen monies. The fact that they were stolen by a government agency desperate for cash makes no difference.

---

1    Cornell Law School Legal Information Institute https://www.law.cornell.edu/wex/tax

The State of California has repurposed its state tax agency, the Franchise Tax Board, into a criminal entity that simply steals money from citizens, because it has the power to do so and get away with it.

In order for the stolen monies to conceivably qualify for consideration as some form of tax, Defendants would have to prove that they employed some type of care or diligence in the computation of the amounts stolen. However, just the opposite is true. Defendants have celebrated the fact that they can steal any amount from any citizen, with no basis in law whatsoever, and get away with it.

Americans are familiar with situations where rogue police officers steal money. They may even be familiar with situations where entire police departments are on the take. However, the actions of the California Franchise Tax Board may represent a first in American history: the first time a State level tax agency has devolved into wholesale robbery.

## ALLEGATIONS

Plaintiff sets forth the following facts and allegations based on information, knowledge, and belief. The facts and allegations set forth herein are relevant and common to all Causes of Action in this Complaint.

The Califorinia Franchise Tax Board (hereinafter FTB) is the tax collection agency of the State of California. It was established by California Government Code § 15700.

The FTB operates with a pattern and practice of systematically violating civil rights guaranteed by the U.S. Constitution, the California State Constitution, the State Constitutions and laws of other states where the FTB maintains offices, and of the States where other victims of FTB abuse reside.

Civil rights violations routinely committed by the FTB include seizing property without proper notice, unlawful search and seizure, deprivation of due process rights, harassment and intimidation under color of law, interfering with the right of redress, violation of the right to privacy, and other violations.

The FTB has a notorious reputation for operating with a mindset of impunity and brutality against citizens. The FTB is a powerful government agency that appears to believe that "might makes right."  The FTB behaves as if it is entitled to take whatever it wants from whomever it wants, in California or other States, using any methods regardless of legality. The FTB appears to operate with no respect for basic civil rights or Constitutional protections, and denies victims effective recourse or redress.

The FTB is assisted in this task by a range of California state agencies and municipalies, as well as Task Forces and other entities who share liability.

Although the FTB is a State agency of the State of California, the FTB operates across State lines and maintains fully staffed offices in multiple other States, as if it were a quasi-Federal agency.

16

The FTB has enlisted Federal agencies such as the Department of Homeland Security, the Federal Bureau of Investigation, and the FBI's Joint Terrorism Task Force (JTTF) to carry out unlawful harassment of citizens who file complaints about the FTB, in an attempt to terrify citizens and quell their legally protected Constitutional rights of free speech and redress.

The FTB appears to target the most vulnerable members of society.  News articles show the FTB meting out rough treatment to cancer victims, retirees, and a man with Traumatic Brain Injury (TBI). At a time when they are at their weakest and their government is supposed to protect them, the powerful FTB targets them for vicious abuse instead. Such treatment is not only abhorrent, it is in violation of  42 USC §12101, the Americans with Disabilities Act.

The FTB deliberately makes communications between itself and members and the public as difficult as possible.  This is not mere bureaucratic incompetence, but a deliberate policy designed to deprive members of the public of their Constitutionally protected rights of redress and petition.

The FTB has an annual operating budget of approximately $100 million dollars.  It could easily hire enough representatives to provide adequate service to the public if it wished to do so.  However, the FTB deliberately chooses not to do this. The FTB knows that if it makes it extremely difficult for the public to interact with the FTB, many victims of FTB misconduct will eventually be forced

to simply give up attempts to recover their property, and abandon their right to due process.

Numerous social media posts made by private citizens describing their attempts to contact the FTB or otherwise interact with it. A large number of victims, unknown to each other and posting independently of each other, have remarkably similar stories of the agonizing difficulty in attempting to interact with the FTB.  These posts indicate that the difficulty in communicating with the FTB are not isolated incidents, but the result of a deliberate agency-wide policy well known to management designed to deprive the public of the civil right of redress.

A reasonable person might ask why social media posts are being used as evidence of FTB misconduct. This is because no audit of the FTB has ever been carried out by the State of California. No audit, review, inquiry, hearing, or oversight of any kind has ever been conducted on the FTB by Defendant California State Auditor, by Defendant Californai Government Operations Agency, by Defendant California Department of General Services, by Defendant Little Hoover Commission, or by any other California agency with oversight responsibility.  The FTB has been declared by the State of California to be above the law, immune from accountability, and beyond all scrutiny.

Management of the FTB is well aware of the range of systematic abuses carried out by their agency. Other parties with a legally mandated oversight responsibility over the FTB (including FTB board members, elected officials, and other California state agencies) are also well aware of the systematic abuses at the FTB. The abuses carried out by the FTB are notorious. They have been the subject of news stories, investigative reports, online complaints, and complaints on social media. Multiple victims use strong terms like "criminal," "illegal," "fraudulent," "un-Constitutional," "robbery," "Catch-22," "horror stories," and "theft" to describe what happened to them.

California state officials who have legal responsibility for providing oversight to the FTB have no interest in remedying these abuses. They are satisfied with the status quo because the FTB brings in vast quantities of money to the State of California each year. This money benefits them either directly or indirectly through the budgets, projects, and programs they manage.

The management of the FTB itself has no interest in remedying the practice of systematic FTB abuses. To the contrary, they enjoy the perception of being perceived as powerful bullies. The FTB has a reputation for being a vicious agency that will attack citizens relentlessly with every tool at its disposal. Instead of resolving matters fairly in accordance with the law, the FTB has a mentality of "scorched earth" and "win at all costs" when dealing with citizens.

19

This attitude is totally unfit for a government agency purporting to serve the public.

The FTB values its reputation for brutality with taxpayers because cultivating such a reputation makes it less likely that a victim of FTB misconduct will take action to protect their rights or recover their property.  The victim will realize that they are no match for such a merciless government agency.  The victims will be forced to abandon their legitimate claims and forfeit their property.

When the California Franchise Tax Board seizes funds from individuals without legal basis or due process, the consequences for victims are devastating. Yet the California Franchise Tax Board displays a stance of wilfull depraved indifference to the victims of its wrongdoing. It refuses to remediate or even acknowledge its misconduct.

The California Franchise Tax Board is operating across State lines. It is violating the civil rights of not just citizens of the State of California, but citizens of other States over which it has no jurisdiction.   The California Franchise Tax Board has set up a network of physical offices in different States to facilitate these activities.

As a State tax agency, the California Franchise Tax Board should be politically neutral. Yet it appears to operate with significant political bias.  Its

public social media activity demonstrates a belittling and dehumanizing view of citizens who hold opposing political viewpoints.

In the court case of Franchise Tax Board of California v. Hyatt, the Franchise Tax Board demonstrated shocking racial and religious bias, targeting taxpayers based on protected characteristics and using ethnic slurs against them.

The consequences of the abuses committed by the California Franchise Tax Board are devastating for victims, yet victims lack any means of redress because the State of California provides no oversight of this rogue agency. To the contrary, there is a widespread understanding in the California state government that the Franchise Tax Board is off-limits from any oversight or supervision because the Franchise Tax Board brings in vast quantities of money each year for the State of California.

The California Franchise Tax Board is not merely an administrative agency. It is also a police force under the meaning of 34 U.S.C. §50301 (11). A substantial body of California Franchise Tax Board officers are armed and sworn police officers with all the police powers enumerated in 34 U.S.C. §50301(11). They carry firearms, train for the use of deadly force, participate in raids, apply for and execute search warrants, conduct covert surveillance, arrest suspects, and perform other law enforcement functions. The California Franchise Tax Board also participates in numerous State and Federal law enforcement Task Forces,

21

and unlawfully uses these Task Forces to harass and bully citizens without any legal justification or jurisdictional authority.

The California Revenue and Taxation Code places the responsibility for lawfully collecting taxes within the State of California to the California Franchise Tax Board.  The FTB is legally obligated to abide by the same standards of care and respect for Constitutionally-guaranteed civil rights as any other government department.

The California Revenue and Taxation Code (RTC) specifically describes the sensitive nature of the responsibilities of the Franchise Tax Board. It takes the time to carefully describe the tremendous public trust that the FTB is entrusted with. Quite remarkably, the RTC specifically warns of the risk of FTB activities descending into "government oppression."  California RTC § 7081 states:

> "The Legislature finds and declares that taxes are the most sensitive point of contact between citizens and their government, and that there is a delicate balance between revenue collection and freedom from government oppression.  It is the intent of the Legislature to place guarantees in California law to ensure that the rights, privacy, and property of California taxpayers are adequately protected during the process of the assessment and collection of taxes."

California RTC § 7081 plainly warns of the risk of the FTB descending into "government oppression." It warns against the FTB violating the "rights, privacy, and property" of taxpayers. It is a clear notice that the FTB must strive to avoid

22

violating Constitutional rights. Every officer and Board member of the FTB has a duty to comply with this legislation- yet they do not.

Another piece of legislation requiring the State of California to provide a fair and law-abiding tax collection process is Assembly Bill 102, known as the Taxpayer Rights Act of 2017. It states:

> SEC. 2. The Legislature finds and declares all of the all of the following:
> (a) California taxpayers are entitled to a tax administration and appeals process that is fair, transparent, consistent, equitable, and impartial. Such a system is vital for both taxpayers and their businesses as well as the state's ability to pay for public services...

The State of California has fallen far short of the legal obligations contained in Assembly Bill 102.

The activities of the FTB are controlled by multiple bodies of law at both the State and Federal level. These include the California Government Code, the California Penal Code, the California Revenue and Taxation Code, the California State Constitution, the California Taxpayer's Rights Act, the California Taxpayer Transparency and Fairness Act of 2017, the California's Taxpayers' Rights Conformity Legislation of 1997, and other laws. The activities of the FTB are further governed at the Federal level by the United States Code and the United States Constitution. When the FTB operates in other States, it is governed by the laws and safeguards of those States.

Officers and employees of the Franchise Tax Board are aware of these

23

voluminous laws and safeguards. They are aware of the admonition in RTC § 7081 against the FTB devolving into "government oppression."  When officers and employees of the Franchise Tax Board violate civil rights, they do so knowingly.

Federal law supersedes State law. No California state law, agency, employee, policy, or common administrative practice may violate Federal law, to include Federal civil rights protections enumerated in the U.S. Constitution. Article VI, Clause 2 of the U.S. Constitution (the "Supremacy Clause") states that no State action, law, or policy may contradict or violate the civil rights protections afforded in the U.S. Constitution.

Numerous agencies and officers within the State of California also have a legal responsibility to provide oversight for the Franchise Tax Board.

The FTB is comprised of three individuals. The term "Franchise Tax Board" is commonly used as shorthand to refer to a State agency comprised of many thousands of officers, employees, and staff members. However, the actual Franchise Tax Board is comprised of just three individual Board Members.[2]  The other thousands of officers, employees, and staff members are merely support staff for the three-member Franchise Tax Board.  This is described in California Government Code § 15700 which states:

---

[2]

24

> "There is in the state government, in the Government Operations Agency, a Franchise Tax Board consisting of the Controller, the Director of Finance, and the Chairperson of the State Board of Equalization."

At the time of filing this Complaint the three members of the Franchise Tax Board are: Betty Yee, California State Controller; Joe Stephenshaw, Director of the California Department of Finance; and Malia Cohen, Chairperson of the California State Board of Equalization.

Pursuant to California Government Code § 15700, each of these three members of the Franchise Tax Board bear full individual responsibility for everything that happens at the FTB.  They bear full responsibility for all decisionmaking, policies, and outcomes for all matters large and small.

The three FTB Board Members know about the abuses of the FTB, but have denied responsibility for the misconduct of the FTB. They have claimed that they are only responsible for issues of high level policy, and have no responsibility to investigate citizen complaints of abuse.  However, this is not the case. The law clearly states that each FTB board member is responsible for all matters concerning the FTB, from the highest policy decisions to the smallest detail, including citizen complaints.  California Government Code § 15700 states:

> "The Franchise Tax Board is the successor to, and is vested with, all of the duties, powers, purposes, responsibilities, and jurisdiction of the Franchise Tax Commissioner, but the statutes and laws under which that office existed and all laws prescribing the duties, powers, purposes, responsibilities, and jurisdiction of that office, together with all

lawful rules and regulations established thereunder, are expressly
continued in force."

This code clearly states that the FTB, which is comprised of three individual

Board members, "is vested with, all of the duties, powers, purposes, and

responsibilities" of the FTB.  There is no delineation between  "big issues" and

"small issues," as members of the FTB have spuriously claimed.

The Taxpayer Rights Advocate office was established by RTC § 21004.  It

was intended to be an independently operating office to provide assistance to

taxpayers for dispute resolution. It was specifically intended to aid taxpayers at

risk of abuse from the Franchise Tax Board, and protect their civil rights. RTC §

21004(b) states:

"The advocate or his or her designee shall give highest priority to
reviewing and taking prompt and appropriate action, including staying
actions where taxpayers have suffered or will suffer irreparable loss as the
result of board action."

Despite the requirement in law to establish a Taxpayer Rights Advocate

office, the FTB has failed to do so. For many years the office went unstaffed. The

legal requirement to appoint a Taxpayer Rights Advocate was ignored.

The failure of the FTB to establish a Taxpayer Rights Advocate office as

required by law has caused serious harm to Plaintiff and others similarly

situated.  Many problems could have been avoided, and civil rights protected, if

the FTB had established an independent Taxpayer Rights Advocate office as required by law.

Perhaps sensing legal jeopardy from Plaintiff's pending complaint, the Franchise Tax Board has recently appointed a Taxpayer Rights Advocate. However, that person has refused to interact with the public or assist taxpayers with complaints, including Plaintiff, and operates as a figurehead only.

The boundaries of the State of California are defined by California Government Code §§ 160-172 Article 3.  The FTB possesses no authority outside the State of California.  Despite this, the FTB is conducting extensive cross-border activities.  Citizens in states far removed from California have reported being subjected to FTB abuse, harassment, asset confiscation, and civil rights violations, with no legal basis whatsoever.

The Franchise Tax Board has established a network of physical offices in other states in furtherance of these cross-border activities. The known locations of FTB offices in states other than California are in New York, Houston, and Chicago. Their addresses are:

California Franchise Tax Board in New York
1212 6th Avenue, New York NY 10036


California Franchise Tax Board in Texas
Wedge International Tower, 1415 Louisiana St, Houston, TX 77002

27

California Franchise Tax Board in Illinois
120 N LaSalle St STE 1600, Chicago, IL 60602

Other interstate offices as yet unknown may also exist.

The non-California offices of the FTB are staffed by locally-hired individuals who have no connection to California. These employees do not appear to even have visited California at any point during their hiring process. For example, the Linkedin and Glassdoor pages for employees of the FTB New York office show employees who attended university in New York City, who live on Long Island, and who state that they were interviewed and hired via teleconference interview with FTB headquarters in California- all without leaving New York State.

Numerous people in states other than California have reported being targeted by the California FTB. These individuals have no connection to the State of California. They report being shocked, fearful, and mystefied as to why the California FTB is targeting them.  These individuals who have no connection to the State of California are receiving demand notices and asset seizures from the FTB, for no apparent legal reason.

Victims of FTB cross-border targeting have no legal recourse, which is a violation of their right to due process. They are left in an inter-state legal limbo. When they complain to their local State authorities in the state in which they

28

reside, they are told that their local State has no jurisdiction over the FTB, so victims must deal with California directly to resolve the matter. When they complain to Federal authorities, they are told that the FTB is a State agency not subject to Federal law.  And when they contact the FTB in California, they are met with the predatory denial of civil rights that characterizes FTB interactions with the public.

The FTB is acting in a Federal capacity, operating across State borders, yet it demands that victims in other States respond within the California FTB framework. This is a violation of the right to due process, the Commerce Clause, and other safeguards against cross-border abuse.

By operating across State borders and establishing physical offices in different States, the FTB appears to be creating a parallel IRS: a quasi-Federal agency with the potential to levy taxes on Americans nationwide, whose victims have no legal recourse, usurping Federal powers of taxation.

These cross-border activities negate any sovereign immunity the FTB may have enjoyed under the 11th Amendment, because the FTB is no longer operating as a State agency within the borders of the State of California.

The FTB shows evidence of alarming political bias in its interactions with taxpayers.  The FTB's official social media accounts have "liked" politically-charged posts from other users that are demeaning and vulgar to FTB political

opponents.  These posts "liked" by the FTB contain obscene, crude, and dehumanizing references to political conservatives and/or supporters of former President Donald Trump. The posts "liked" by the FTB social media accounts use gutter humor, scatological images, racially charged images, and crude profanity in referring to politically conservative citizens.

The official FTB Twitter account "Liked" a Twitter post dated July 6, 2020 containing an image that portrayed former President Trump as a member of the Ku Klux Klan wearing a Klan hood and robe, proclaiming President Trump as "Klansman of the Year," and referring to the former President as the "Wizard in Chief," a reference to the position of Grand Wizard in the Ku Klux Klan.

The official FTB Twitter account "Liked" a post dated July 6, 2020 containing an image superimposing a picture of human excrement over the brains of former President Trump.

The official FTB Twitter account "Liked" a post dated July 6, 2020 mocking former President Trump with vulgar references to human anatomy.  The post directed to the former President said  "You can barely hoist a glass to your anus-shaped mouth"  and referring to the former President with the hashtag #RacistInChief

30

The official FTB Twitter account "Liked" a post dated July 6, 2020 directed at former President Trump, telling the former President: "The President of the United States is a disgusting racist" followed by the hashtag #RacistInChief.

The official FTB Twitter account "Liked" a post dated July 6, 2020 directed to former President Trump, telling the former President: "Trump is right- they should acknowledge his vision of the U.S. and rename them the Washington Racists."

The official FTB Twitter account "Liked" a post dated July 6, 2020 directed at former President Trump, telling the former President: "President Trump is now just a racist Mad Libs"

The official FTB Twitter account "Liked" a post dated July 6, 2020 directed at former President Trump, telling the former President: "Just like we wouldn't name a team the Colored People, we should not have teams named the Redskins or Indians. I know you probably don't know this Mr. Trump but Native Americans are not from India."

The official FTB Twitter account "Liked" a post dated July 6, 2020 directed at former President Trump, telling the former President: "Calling a Native American a "Redskin" or an "Indian" is not a compliment! It's an insult. How would you like being called an Orangeskin?"

The official FTB Twitter account "Liked" a post dated July 6, 2020 directed at former President Trump, telling the former President: "What the actual fuck is wrong with you?"

The official FTB Twitter account "Liked" a post dated July 6, 2020 directed at former President Trump, telling the former President: "The President of the United States is a disgusting racist," followed by a clown emoji. This message concluded with the hashtag "#TrumpIsARacist"

No disparaging posts "Liked" by the FTB were directed at any other political party. The FTB's contempt is directed in one direction only: at political conservatives. That the FTB would publicly "like" such vulgar, dehumanizing, racially and politically-charged posts demonstrates an alarming political bias. It indicates that the FTB views political conservatives as the enemy, less than human, and parties to be targeted by the powerful FTB.

The FTB has a shocking lack of due process that does not reach the standard required by 4th Amendment protections against unreasonable search and seizure. The FTB undertakes seizure actions against citizens based on made-up figures created by them in-house, with no attempt to verify the veractiy of these numbers and no avenue for citizens to challenge them.

The FTB states that its policy is to initiate seizure actions (based on the aforementioned false numbers) after merely sending one letter, sent by regular

mail (not certified or return receipt requested) to the victim's last known address. In many cases the "last known address" is many years old and the matter in question is many years old as well.   The FTB has stated that it believes that sending a single letter by regular mail to a last known address constitutes enough due process to conduct a seizure operation, in which the entire assets of a citizen may be seized. This may include life savings, 401k assets, retirement plans, checking account, current account, and every other asset they may own. It may also include seizing physical property such as cars and houses.  Aside from the single, unregistered letter, no other attempt to contact or notify the citizen is attempted by the FTB.  These seizures often occur across State lines.

Even when claiming to have sent a letter. it is doubtful the Franchise Tax Board did in fact send a letter, and the FTB can provide no proof that they actually did send a letter.

The FTB has stated that it knows that it is not providing due process to each citizen, but that it is not willing to provide adequate due process to each citizen because it is too much of an inconvenience. The FTB has stated that the number of citizens is too large and that it is not logistically feasable for the FTB to treat every citizen as an individual case. However, this directly contradicts the protections guaranteed by the 4th, 5th, 8th, and 14th Amendments of the U.S. Constitution. The right to due process and the right to be free from unreasonable

33

search and seizure are not dependent upon the convenience of the FTB.  The fact that the FTB wishes to operate an industrial-scale conveyor belt of seizure operations in the shortest amount of time does not negate the Constitutional right of each individual citizen to due process.

The FTB has an annual operating budget in the range of $100 million dollars per year.  It could also obtain additional funds if needed by requesting them from its parent agency, the California Government Operations Agency, or making a funding request to the Governor or the Legislature. Many FTB staffers earn well over six figures per annum in salary. The FTB possesses abundant resources to allow it to conduct staffing and operations in a manner that would provide for the civil rights and due process of members of the public. However, it deliberately chooses not to.

The FTB particpates in a Task Force operated by the California Department of Justice called TRUE ("Tax Recovery in the Underground Economy." This Task Force was established by the State of California in 2019 pursuant to the adoption of California Government Code § 15926.  Other State and Federal agencies also participate on this Task Force.  These agencies include the Department of Homeland Security, Homeland Security Investigations (HSI), and the Federal Bureau of Investigation, among others.  The activities of this Task Force are strictly limited by California Government Code § 15925 to pursuing violations of

law in the underground economy, as its name indicates. Despite this, the FTB has been utilizing this Task Force to harass members of the public who file complaints about the FTB. The Task Force, its constituent member agencies and officers, have no authority whatsoever to contact members of the public who file complaints about the FTB, yet it does so in order to intimidate them and chill their First Amendment rights.

No other State tax agency in America appears to generate the volume of complaints from members of the public that the California FTB does. Tax agencies in other states seem to have found a way to be able to conduct their operations without generating such an incredibly high volume of complaints and horror stories from members of the public.

No other State tax agency has the FTB's reputation for legal belligerance and vendettas. In the the notorious case Franchise Tax Board of California v. Hyatt the FTB pursued Mr. Hyatt for 25 years, FTB staff spent tens of millions of dollars from the public treasury in legal fees, surveilled and searched his property without a warrant, posed to take "trophy photos" outside his house, and sent bogus "demand notices" containing his social security number that slandered Mr. Hyatt to every member of his religious congregation. The confrontational, vindictive, and abusive nature of the California FTB is well known among tax professionals and citizens alike.

The horrific case of FTB abuse against Mr. Hyatt made the newspapers because Mr. Hyatt is a rich inventor. However, the FTB pursues similarly vicious and brutal actions against members of the public every day that do not make the newspapers because the victims are just ordinary citizens.

When the California FTB seizes funds from individuals, the consequences are devastating. It is not a mere inconvenience. Victims of FTB seizures are suddenly placed in a situation that essentially amounts to a fight for their life. Through no action or fault of their own, victims are left with no money, because the FTB empties their bank account without warning to the last penny.  Victims are illegally deprived of money belonging to them that is necessary to pay for the basics to sustain life such as food, shelter, safety, transportation, gasoline, baby formula, rent, heat, electricity, cell phone minutes, car insurance, child care, insulin, prescription drugs, and the myriad of other items necessary for day-to-day living.  It is possible that some victims of illegal FTB seizures have been seriously injured or even died, after being deprived of the resources needed for life.

The consequences of being a victim of an illegal FTB seizure are dramatic and life-altering. They cause permanent and substantial harm to the victim, including physical harm, financial harm, and distress.

36

Plaintiff alleges that in 2015, the California Franchise Tax Board carried out an illegal interstate seizure of Plaintiff's bank account, with no warning or due process. The FTB emptied Plaintiff's bank account to the last penny, leaving it at zero balance.  The seizure was not based on any actual amounts owed or even any actual financial data, and caused Plaintiff tremendous harm.

At the time of the 2015 seizure, Plaintiff had not lived or worked in California for over a decade.

Plaintiff's bank account was not located in the State of California.  The FTB's actions were a cross-border seizure outside the jurisdiction of the State of California.

Plaintiff made extensive good-faith attempts to attempt to resolve the unlawful seizure with the FTB and seek return of his money.  However, the FTB deliberately made it as difficult as possible to communicate with them regarding the seizure. Plaintiff called FTB numerous times but was placed on hold for hours on end, or transferred in a seemingly random fashion to different departments, then disconnected.  This process repeated day after day.

When Plaintiff did eventually reach the Franchise Tax Board via telephone, FTB telephone staff admitted the seizure had been in error.  FTB staff said the erroneous seizure would be reversed, and the funds placed back in Plaintiff's

bank account. FTB staff portrayed the seizure as a routine bureaucratic error that could be quickly fixed. However, this never occurred.

Defendant FTB later stated the seizure was not based on any facts or legal obligations, but on an "imputed California earned income" that FTB staff had calculated of their own accord. This involves the FTB calculating an imaginary number for an income that may hypothetically have been earned by someone working in the State of California, had a taxpayer resided in the State of California. It is not based on facts, actual income, or the actual residence of the taxpayer.

Many other citizens have reported being victims of this "imputed income" technique by the Franchise Tax Board, a Kafkaesque technique where the citizen is guilty until proven innocent, using completely made-up income figures, and the Franchise Tax Board refuses to examine any evidence to the contrary.  The FTB also uses many other scam techniques in addition to the "imputed income" scam.

At the time of the illegal seizure, Plaintiff did not reside in California and had not resided in California for over a decade. He had no "imputed California earned income" as described by the FTB.

Defendant FTB knew very well that Plaintiff did not reside in California, and had not for over a decade.  Defendant FTB knew that Plaintiff had no

"imputed earned California income." Defendant FTB furthermore had a duty of care to act with proper diligence and make proper inquiries and due diligence before assigning Plaintiff a tax liability.

Defendant FTB could have easily called Plaintiff or Plaintiff's accountant, a licensed CPA, prior to making the illegal seizure.

Defendant FTB admitted in writing that the seizure had been based on multiple FTB mistakes, errors, and omissions. Later, Defendant FTB made false material statements and destroyed documents in order to cover up what they had done, and avoid releasing those documents to Plaintiff pursuant to requests made under the California Public Records Act.

In 2018 after many fruitless attempts to reason with the FTB and obtain his illegally seized funds, Plaintiff contacted his elected representatives and law enforcement to file a complaint about the unlawful FTB seizure. Shortly after Plaintiff filed a complaint, the FTB again emptied Plaintiff's bank account for a second time to the last penny. Again, Plaintiff owed the FTB no money and had received no notice or due process for this second seizure. The FTB also caused Plaintiff's bank account to be closed entirely by the bank, an account Plaintiff had maintained for 20 years. Plaintiff believes the second FTB seizure of Plaintiff's assets, coming shortly after he filed a formal complaint, was simple retaliation

for lodging a complaint. It was an attempt to terrorize Plaintiff into silence under color of law in violation of his Constitutional rights.

In an attempt to resolve the situation, Plaintiff contacted other California state agencies, officers, and elected officials who had legally-mandated oversight responsibilty for the FTB defined by law.  In every case his attempts at resolution were ignored or rebuffed. In many cases these parties acted in direct collusion with the FTB to deprive Plaintiff of his right to redress. In some cases the FTB deliberately provided false and misleading information to those parties in an attempt to block Plaintiff's right of redress.

In response to Plaintiff's complaints about FTB misconduct,  Defendant FTB and its associated agencies began a campaign of harassment of Plaintiff.  The goal of the FTB's campaign of harassment was to terrorize Plaintiff into silence, to retaliate against Plaintiff for filing complaints, and to bully Plaintiff into abandoning his legitimate complaints and his unlawfully seized funds. Defendants unleashed the FTB's "TRUE Task Force" on Plaintiff, despite the "TRUE Task Force" having no legal basis or jurisdiction.

In 2019 Plaintiff received a series of unwanted and harassing phone calls and voicemail messages from Nicole Solander, a Department of Homeland Security employee employed by the FTB "True Task Force."  Nicole Solander attempted to harass, interrogate, and intimidate Plaintiff regarding his complaint

about the FTB. The Department of Homeland Security has no legal jurisdiction or basis for contacting a taxpayer who files a complaint.  Its role on the TRUE Task Force is limited by California Government Code § 15926 that established the Task Force.

In response to previous FTB harassment of Plaintiff under color of law, Plaintiff had invoked his 5th Amendment right to remain silent and demand an attorney.  Defendant Solander violated Plaintiff's 5th Amendment rights by attempting to interrogate him without legal counsel under color of law after Plaintiff had already invoked his 5th Amendment rights.

In 2019 the FTB "TRUE Task Force" sent Defendant Victor Keesey, a member of the FBI's "Joint Terrorism Task Force," to harass Plaintiff with no legal basis or jurisdictional authority. Defendant had already invoked his  5th Amendment rights as stated above. Defendant Keesey and an accomplice, both plainclothes and armed, appeared at a property owned by Plaintiff in search of Plaintiff. Defendant Keesey interrogated neighbors to the property, implying that Plaintiff was an antigovernment tax protester or a terrorist, and asking if Plaintiff had ever discussed, mentioned, or criticized the California Franchise Tax Board. Defendant Keesey left his business cards that prominently stated "Joint Terrorism Task Force" at the property and also with neighbors. Defendant Keesey's actions had no basis in law but were designed to intimidate and terrorize Plaintiff under

41

color of law, slander him in the eyes of neighbors, and undermine Plaintiff's reputation.

A video of Defendant Keesey and his accomplice conducting a similar harassment of a citizen at their residence has gone viral on Youtube, with over 1.5 million views. This video titled "FBI VISIT TO MY HOUSE - INTIMIDATION FAIL - FEDS DRIVE 200 MILES TO ASK ONE QUESTION" posted by user "johnny five o" clearly shows Defendant Keesey and his accomplice arriving at a private residence in plain clothes under color of law and attempting to intimidate the resident, on a flimsy pretext.

Defendants have continued to conspire to deprive Plaintiff of his civil rights. They have refused to return Plaintiff's property to him. They have refused to honor Public Records Act requests as required by law, because they wish to keep their illegal activities secret. The FTB violated privacy laws by sharing Plaintiff's personal data with the Department of Homeland Security, the FBI, the Joint Terrorism Task Force, the TRUE Task Force, and other outside agencies.

Defendants have failed to provide Plaintiff with access to the Taxpayer Rights Advocate, as required by law. Defendants have also deprived Plaintiff of his right to an unbiased internal FTB review of his complaint as required by law.

Defendants have caused Plaintiff to live in a state of anxiety, worried of another attack.  They continue to demand sums from Plaintiff that have no basis in law, and Plaintiff believes he may be attacked by Defendants again at any time.

Plaintiff believes he was treated differently than others similarly situated, and denied services such as the Taxpayer Rights Advocate that were provided to others.

Plaintiff did everything possible to resolve this matter prior to bringing this Complaint. He spoke to every California state agency and California government employee with oversight responsibility over the FTB.  At no point was Plaintiff offered even a modicum of assistance.  No one would assist the Plaintiff with his complaint against the FTB despite having a legal mandate and responsibility to do so.

Not only was Plaintiff not provided any official assistance from any Defendant related to the attacks by the FTB, but Plaintiff was not even offered a modicum of problem solving, mediation, or any type of informal dispute resolution. At no point did a single Defendant say anything along the lines of "We will research this," or "Let's try to figure out what is going on here," or "Can you tell me your side of the story?" Good governance is based on good problem solving, but absolutely no attempt was made by any Defendant to mediate or

resolve the situation. Defendants adopted the posture of "Comply or Die." Defendants refused to even have a good faith discussion about Plaintiff's complaints.

Defendants did not engage in any problem-solving or dispute resolution because Defendants value their reputation as terroristic bullies. Defendants value the reputation of FTB's ability to strike fear into any citizen. If the FTB engaged in problem-solving instead of ulilateral diktats, it would undermine their fearsome reputation as an agency with God-like power to seize and destroy whatever it wants.

It should be noted that at no point have Defendants asserted that their actions were correct. Defendants have raised arcane legal defenses that do not address their actions, such as sovereign immunity, but they have never argued that they are not liable because what they did was correct.  Defendants have never simply stated "Plaintiff owed the money we took, and we calculated it correctly, and we did our jobs correctly."  Plaintiffs have never attempted to use "truth as a defense" because the truth is not on their side.

## Tax Injunction Act Not Applicable In This Case

Defendants have cited the Tax Injunction Act as a defense to their heinous actions. However, the Tax Injunction Act is not applicable in this case for several reasons.

The Tax Injunction act is not applicable in the instant action because the State courts of California lack jurisdiction over Plaintiff. The Tax Injunction Act states:

U.S. Code § 1341:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

The operative phrase "in the courts of such State" render the Tax Injunction Act moot in this case. Plaintiff is not a resident of California and the State courts of California have no jurisdiction over him. Because the courts of California have no jurisdiction over Plaintiff (or any other non-Californian attacked by the FTB), no "remedy" exists "in the courts of such State" pursuant to the TIA. It has been held that a "remedy" that requires a Plaintiff to surrender a right is no remedy at all.

Likewise, no remedy would exist pursuant to the TIA in the State courts of Florida, which would decline to hear the case. Because no remedy exists "in the courts of such State" in either Florida or California, the TIA is rendered moot.

The State courts of California also lack jurisdiction over Defendants. Defendants have asserted that they possess sovereign immunity pursuant to the 11th Amendment and that because of this the Courts of the State of California or Florida have no jurisdiction over them. Therefore, no remedy exists "in the courts of such State" pursuant to the Taxpayer Injunction Act.

45

The Tax Injunction Act is also rendered moot in this case by the decision A.F. Moore & Associates, Inc. v. Pappas, 948 F.3d 889 (2020). That case held that citizens have a right to sue state tax authorities over alleged Section 1983 abuses. This decision held that because Plaintiffs had no opportunity to bring their Federal claims in State court, they had no alternative but to bring them in Federal court, and the Tax Injunction Act was specifically denied. The decision stated:

> "Since the defendants agree that the taxpayers cannot make their equal protection case in state court, the taxpayers have no "remedy" at all for their claims—never mind a "plain, speedy and efficient" one—and the Tax Injunction Act does not bar their federal suit."[3]

The decision in A.F. Moore completely eliminates the Tax Injunction Act as a potential defense by Defendants.[4]

The Tax Injunction Act also fails in the instant action in light of the ruling in of May Trucking Co. v. Oregon Dep't of Transp., 388 F.3d 1261, 1270 (9th Cir. 2004) (citing Direct Mktg. Ass'n, Inc. v. Bennett, 916 F.2d 1451, 1453 (9th Cir.1990). This decision held that a State remedy "is not plain within the meaning of the Tax Injunction Act ... if there is uncertainty regarding its availability or effect."

---

3   A.F. Moore & Associates, Inc. v. Pappas, 948 F.3d 889 (2020)

4   At this stage in the proceedings Plaintiff has no obligation to conclusively prove that California remedies are not "plain, speedy, or efficient" pursuant to the Tax Injunction Act (although he easily can do so at trial); rather, Plaintiff must only demonstrate that the possibility exists that the remedies are not "plain, speedy, or efficient."

Plaintiff asserts that there is substantial uncertainty over the "availability" of a State remedy the California court system, in light of the chatoic and corrupt conditions of the OTA and other courts, and this shortfall negates the Tax Injunction Act pursuant to the May Trucking decision.[5]

Plaintiff asserts that there is substantial uncertainty over the "effect" of the California court system, in light of the chaotic and corrupt conditions prevailing there, within the meaning of the May Trucking decision.[6]

Defendants claim that the Tax Injunction Act deprives this Court of subject matter jurisdiction pursuant to FRCP Rule 12(1)(b). This is a risible claim. The TIA may impact the ruling or outcome of a case, but it does not have any bearing whatsoever on subject matter jurisdiction. Subject matter jurisdiction is determined solely by the FRCP. The TIA merely affects how those cases may be adjudicated, not whether or not they will be heard.

Plaintiff contends that even the widespread perception that a state court is is not "plain, speedy, and efficient remedy" renders it not so, pursuant to the Tax Injunction Act. California has done everything it can to create the impression of a bullying, terroristic tax regime that cannot be challenged. As evidence of this, many victims who tried to reclaim their funds in the California court system

---

5 May Trucking Co. v. Oregon Dep't of Transp., 388 F.3d 1261, 1270 (9th Cir. 2004) (citing Direct Mktg. Ass'n, Inc. v. Bennett, 916 F.2d 1451, 1453 (9th Cir.1990).

6    Ibid.

reported in the media feelings of helplessness that caused them to either abandon their claims, or consider abandoning them, due to the impenetrable California system of reclaiming money stolen by the FTB. One retired couple who had their entire life savings of over $300,000 stolen by Defendant Betty Yee and Defendant California State Controller stated:

"WINTERS (CBS13) - An eight-month-long battle is finally over for a Winters couple who had trouble getting their investments back from the state of California.

They decided to call Kurtis after their investments ended up with the state after it deemed the investments were unclaimed property.  There was $275,000 in stock and another $50,000 in cash taken from the couple's Charle's Schwab account.

"It's pure theft," said Eugene Breznock.

But the Breznocks learned it's not so easy to get their property back.

"I can't tell you how many nights I've been awake thinking of what a rotten this system this was and how long it's gonna take me to get back to be able to use my funds for the needs that I need it for," said Eugene... "This is unconstitutional stealing," said attorney William Palmer.

Attorney William Palmer says the program has turned into California's fifth-largest revenue stream -- twisted from its original purpose: to protect property when people become "lost and unknown."

The Breznocks... are appalled over the state program.

"That they take money from people as old as we are -- that we have saved and sweated blood for -- I mean that's a lot of nerve!" (Breznock) said.

In 2015, the Legislative Analyst Office warned the revenue "creates an incentive for the state to reunite less property with owners." [7]

The ordeal of the Breznocks portrays the sense of helplessness and hopelessness that many citizens when attempting to use the California courts to retrieve property stolen by Defendants.

Another victim of Defendants criminal conduct reported the same feeling of bias when faced with the California court system.  The website ""FTB Fighter: Fighting Corruption at the California Franchise Tax Board"[8] stated:

> "I had been warned by two different tax attorneys that OTA almost always sides with FTB, so hiring an attorney would be a waste of money. At one point, I did ask OTA how many cases FTB has won vs how many they have lost, and OTA refused to disclose the number to me. They told me that the verdicts are posted online and I am welcome to go through every case to count them up for myself.[9]

Clearly, there is not the perception of justice here when faced with the California court system. Even this victim's own attorneys told her so and advised her not to bother using the California court system.

The website "FTB Fighter: Fighting Corruption at the California Franchise Tax Board" also alleged that Defendant Jozel Brunett, the chief legal counsel of the Franchise Tax Board, improperly appeared with the judges in the California

---

[7]   "Unclaimed Property: $275,000 Vanishes From Retirees Account, Transferred To The State Of California" CBS News Sacramento, May 18 2021 https://www.cbsnews.com/sacramento/news/state-of-california-unclaimed-property-275k-vanishes-retirement/

[8]   FTB Fighter: Fighting Corruption at the California Franchise Tax Board https://gwsandiego.net/blog/?page_id=391

[9]   Note: Plaintiff did "go through every case to count them up for myself" as the OTA recommended to this victim, and calculated that 98% of cases before the OTA are resolved in favor of the FTB.

OTA state court. In a section titled "Possible Coercion of Judges," this victim documented that after her OTA hearing had concluded and everyone else was shooed out of the room, Defendant Jozel Brunett remained in the room with the judges, presumably to instruct the OTA judges how to decide the case.[10]

Another story indicates that many victims of FTB abuse simply give up rather than enter the notorious California court system. An article titled "Call Kurtis Investigates: CA Raiding Bank Accounts and Intercepting Tax Refunds By Mistake" discussed how many victims simply "give up."

> "Yet, our viewers say that didn't work for them, and they didn't get their money returned until CBS13 intervened. Every one of these viewers is asking how many others simply give up.
> "Once you're caught in this, it's up to you to fight your way out," Settlemire said.
> "I feel as if you're putting a gun to me and robbing me, but you got immunity from any prosecution," said Jones.[11]

Clearly, a California tax court system where many victim simply "give up" and the perpetrators are perceived to have "immunity from any prosecutuion" is not a "plain, speedy, and efficient remedy" per the Tax Injunction Act.

This widespread perception alone constitutes a bar to a "plain and speedy remedy." A parallel may be drawn with civil rights and voting.  If,  for example,

---

10  "Why The OTA Opinion In My Case Was Blatantly Corrupt" FTB Fighter: Fighting Corruption at the CA Franchise Tax Board, September 4 2020 https://gwsandiego.net/blog/?p=422

11  "Call Kurtis Investigates: CA Raiding Bank Accounts and Intercepting Tax Refunds By Mistake" CBS News Sacramento, May 12 2017, https://www.cbsnews.com/sacramento/news/tcall-kurtis-tax-refund-taken-by-california/

a State authority worked to create an  impression that certain categories of people will  not be allowed to vote, and  that  they will  suffer brutal  treatment if they attempt to do so, then it does not ultimately matter what happens when a brave few do eventually approach the polling place. The perception alone has served to deter many from exercising their rights.

Plaintiff asserts that a large portion of the money stolen from him was designated as a "fee" or "penalty" and therefore not covered by the Tax Injunction Act. It has been repeatedly held that the Tax Injunction Act only covers taxes, not fees. In their zeal to steal as much money from Plaintiff as possible, Defendants sent bogus "demand notices" to Plaintiff's bank that included every type of fee and penalty their imaginations could devise. These "fees" and "penalties" are not covered by the Tax Injunction Act.

Defendants also falsely placed a lien on a property owned by Plaintiff, thereby depriving Plaitiff of his right to freely use, sell, refinance, or dispose of the subject property. Liens are not covered by the Tax Injunction Act.

The Tax Injunction Act also does not apply on procedural grounds due to a lack of a "plain, speedy and efficient remedy" in the State of California. 28 U.S. Code § 1341 states:

> "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

Plaintiff argues that no "plain, speedy, and efficient remedy" exists in California as required by the Tax Injunction Act. The state of tax courts in California is plainly a disaster. A description of the disastrous Office of Tax Appeals, the primary mechanism for hearing FTB disputes in California, is described elsewhere in this Complaint.

The very fact that the Office of Tax Appeals was established in the first place is a full admission by the State of California that a "plain, speedy, and efficient remedy" is not available in State court as required by the Tax Injunction Act. If a "plain, speedy, and efficient remedy" existed in the State courts of California, the State of California would not have established its new State court known as the Office of Tax Appeals. All public reporting on the matter confirms that the Office of Tax Appeals was established because the California state court system for resolving taxes is a disaster. It is not "plain, speedy, or efficient" as required by the Tax Injunction Act.

The California Taxpayer Transparency and Fairness Act of 2017 which established the Office of Tax Appeals describes a state of total anarchy and corruption in California tax courts. The following are not the Plaintiff's words, but the words of the California State Legislature itself in the Taxpayer Transparency and Fairness Act of 2017:

52

(e) The State Board of Equalization's current practices support inappropriate interventions by board members in administrative and appeal-related activities, all of which have led to inconsistencies in operations, breakdowns in centralized processes, and activities contrary to state law and budgetary and legislative directives.

(f) The current operational environment has also led to numerous complaints concerning members of the State Board of Equalization and their staff's attempt to influence the audits, investigations, and collections activities of the board's civil service employees.

(g) The State Board of Equalization's civil service employees, who seek to professionally perform their duties according to the law, are handicapped in their efforts to fairly apply the law through the undue influence of elected board members and the staff of board members.

(h) The current system of routine interference by members of the State Board of Equalization or their staff effectively eliminates the board's executive director's ability to, and all of the board's upper management's ability to, effectively and efficiently operate the organization.

(i) Due to the State Board of Equalization's failure to focus on its core responsibilities, significant errors in the board's allocation of sales and use tax revenue among the state, cities, and counties continue to materialize and result in the inability to effectively plan for the provision of public services.

(j) In order to restore the public's trust in the system and provide a work environment that is free from undue influence, it is necessary to enact changes to the State Board of Equalization that put fairness, consistency, and transparency of the tax administration and appeals processes in the forefront.[12]

---

12 Taken from the Taxpayer Transparency and Fairness Act of 2017, which established the Office of Tax Appeals and the office of the California Taxpayers Advocate, both Defendants in this case

The wording of this document is astounding. It paints a picture of total anarchy in the California tax court system to the point of bribe taking and loss of public confidence.

Although the Taxpayer Transparency and Fairness Act (hereinafter TTFA) attempted to remedy the problem of chaotic and corrupt tax system, it did not. To the contrary, it made things far worse. The OTA is far worse than the California state tax courts prior to it that it sought to remedy.

It would appear that in designing the Office of Tax Appeals, the State of California began with the question: "How can we design a state tax appeals court that as corrupt as possible, has the maximum conflicts of interest possible, and is as unaccountable as possible?" They amply succeeded in that task with the OTA.

All OTA judges and representatives are hand-picked by the Governor himself. Many of them are concurrently serving officers with the very abusive tax agencies they purport to adjudicate disputes with, pulling double duty at the Franchise Tax Board and the OTA. All of them have deep financial and career ties to the Franchise Tax Board and California state tax system.

The Office of Tax Appeals is a State tax court established by the State of California for the adjudication of tax disputes. One feature that renders moot the notion that it is a "plain, speedy, and efficient remedy" is the $5,000 fine it routinely levies on citizens who appear before it to dispute tax bills.

54

The "judges" of the OTA (who are not really judges at all, but political hacks appointed by the Governor) have the ability to unilaterally issue fines of $5,000 to any Defendant who appears before them on the charge of "bringing a frivolous appeal." There are no standards for what constitutes a "frivolous appeal" and the fine cannot be appealed. If a defendant fails to pay the fine, they could end up in jail. Very conveniently, the $5,000 fine ends up in the general budget of the OTA where it is used for discretionary spending by the very "judges" who levied the fine.

The issue of the $5,000 fine is important because it renders moot the idea that the OTA is a "plain, speedy, and efficient remedy." No court in which an appeal is brought in good faith is "plain, speedy, and efficient" when the defendant could end up worse off than their original position- or even in jail- merely for exercising the right to dispute a tax bill. This is especially the case when the California OTA court that employs the "judges" get to keep the $5,000 fine they arbitrarily levy, and therefore have an incentive to levy it as frequently as possible.

The risk of a $5,000 fine being unilaterally and arbitrarity levied against a complainant constitutes an "unusual hardship" pursuant to  Hyatt v. Yee, 871 F.3d 1067 (9th Cir. 2017). This decision clarified the "efficient" requirement of the

"plain, efficient, and speedy" standard demanded by the Tax Injunction Act. It

stated:

> "A state remedy is "efficient," as required for the Tax Injunction Act to
> prevent a federal court from intruding into state tax collection, unless it
> imposes an unusual hardship requiring ineffectual activity or an
> unnecessary expenditure of time or energy. Hyatt v. Yee, 871 F.3d 1067
> (9th Cir. 2017)

Plaintiff asserts the Tax Injunction Act is not applicable because the OTA is

not a "plain, efficient, and speedy remedy" due to the fact that the OTA requires

"inneffectual activity" as defined by Hyatt v. Yee (2017). As  described in the

Constitutional Challenge to the OTA in this Complaint, approximately 98% of

OTA disputes are resolved in favor of the State of California. Plaintiff asserts that

requiring citizens to participate in the phony exercise of a kangaroo court where

98% of disputes are decided against them constitutes "innefectual activity"

purusant to Hyatt v. Yee (2017). Put simply, it's a waste of time, and therefore

"innefectual activity" per Hyatt v. Yee (2017).

The Tax Injunction Act is also rendered moot because any California court

system, whether the Office of Tax Appeals or any other, would constitute an

"unusual hardship" for Plaintiff pursuant to  Hyatt v. Yee (2017). Leaving aside

the issue that the courts of California lack jurisdiction over Plaintiff, the Plaintiff

would be required to travel some 6,000 miles round trip from his home in Florida

to any court in California to attend routine court hearings, of which there may be dozens, in a process stretching out for years.

For example, in the case of Hyatt v. Yee (2017) the State of California stretched out the legal proceedings for over 20 years in order to harass and oppress inventor Gilbert Hyatt.  Mr. Hyatt is an inventor and a scientist- both professions known for rationality. Had the FTB worked to create any solution even remotely acceptable, Hyatt would most likely have taken it rather than waste 20 productive years of his life battling the FTB.

Even in the instant action, Plaintiff has spent 6 months of his life pursuing the complaint and has not even yet had a court hearing. The idea of spending years routinely traveling 6,000 miles, merely to recover money stolen in a crime where Plaintiff is the victim, would clearly impose an "unusual hardship" on Plaintiff pursuant to Hyatt v. Yee (2017).  Plaintiff lacks the resources of time and money to routinely travel 6,000 miles.

Plaintiff has already spent six months of his life on this Complaint. The complaint was filed in December 2022 and it is now June 2023. Plaintiff asserts that causing him to abandon this Complaint after he has already spent six months of his life on it would impose an "unusual hardship" on Plaintiff and also separately ammount to "ineffectual activity" per Hyatt v. Yee (2017).

The Tax Injunction Act is also rendered moot by the test of whether a remedy imposes an "unnecessary expenditure of time or energy" in Hyatt v. Yee (2017).  This is a separate test from the other tests in that decision based on the operative word "or." The Hyatt v. Yee decision states:

> "A state remedy is "efficient," as required for the Tax Injunction Act to prevent a federal court from intruding into state tax collection, unless it imposes an unusual hardship requiring ineffectual activity or an unnecessary expenditure of time or energy. Hyatt v. Yee, 871 F.3d 1067 (9th Cir. 2017)

Plaintiff argues that requiring him to routinely travel 6,000 miles to attend routine hearings on the other side of the continent constitutes an "unnecessary expenditure of time" pursuant to Hyatt v. Yee (2017). Plaintiff also lacks the resources of time and money to routinely travel 6,000 miles.

Plaintiff argues that requiring him to travel 6,000 miles to attend routine hearings on the other side of the continent also constitutes an "unnecessary expenditure of energy" pursuant to Hyatt v. Yee (2017). In that decision, the terms "time" and "energy" are separated by the word "or," rendering them two separate tests. Plaintiff argues that the Tax Injunction Act fails on both the "time" test and, as a separate matter, on the "energy" test of Hyatt v. Yee (2017).

**Stolen Money Is Not "Tax" Pursuant To the Tax Injunction Act**

Plaintiff argues the monies stolen by FTB employees do not meet the definition of "tax" pursuant to the Tax Injunction Act because they were stolen with no plausible relationship to tax. The FTB is unable to prove that a legitimate relationship to taxation exists based on any generally accepted principle of accounting earnings, income, analysis, due diligence, or any other factor. The Tax Injunction Act is only applicable in cases of tax. Plaintiff asserts that the actions of Defendants were not related to tax, but simple theft. The actions of the FTB bear as much relationship to "tax" as the actions of Dr. Larry Nassar bear to sports medicine: the job was merely used as cover for the crime.

The "seizure of property by [a] State under pretext of taxation when there is no jurisdiction or power to tax is simple confiscation and a denial of  due process of law." Miller Bros., 347 U.S. at 342. This decision confirmed thta stolen money is not to be considered tax, even if it is stolen by indivduals employed at a government agency. Rather, it is "simple confiscation."

## California Has No Jurisdction Or Sovereign

## Immunity Outside State Lines

When California ventures outside its borders, it is subject to Federal jurisdiction and enjoys no sovereign immunity. "Activities that are beyond reach of Congress are those which are completely within particular state, which do not affect other states, and with which it is not necessary to interfere for purpose of

59

executing some of general powers of government. U.S.C.A.Const. art. 1, § 8, cl. 3." Katzenbach v. McClung, 379 U.S. 294, 85 S. Ct. 377, 13 L. Ed. 2d 290 (1964).

### Case Law Cited By Defendants Is Moot

Defendants have cited the case of Franchise Tax Board of California v. Alcan Aluminum Ltd., 493 U.S. 331, 338 (1990) in claiming the State of California offers a "plain, speedy and efficient remedy." Actually the case did not say that, in the fashion Defendants represent. Rather, the case dealt with complicated issues of shareholder rights and whether a subsidiary of a foreign corporation had the standing to potentially avail itself of such a remedy. But the primary reason the Alcan Aluminum case is not relevant in the instant action is that it was decided in 1990. No meaningful comparison can be made between the conditions prevailing 33 years ago and conditions today. Conditions in the California tax courts have gone downhill drastically since then as evidenced by the need to create the Office of Tax Appeals in 2017 to remedy the situation.

Defendants also cite Aronoff v. Franchise Tax Board, 348 F.2d 9 (1965) and this case is refuted for the same reasons as Alcan Aluminum. The fact pattern of this case is materially different, involving tax decuctions taken on illegal earnings. But the primary reason Aronoff no longer applies is that conditions were much different sixty years ago. The FTB may have been "plain, speedy, and efficient" in the year 1965 but it most certainly is not today.

60

**Pay- First Systems are Unconstitutional When They Cause Injury**

Defendants have stated that their confiscation of assets is a "pay-first system" that is Constitutionally permissible pursuant to Reich v. Collins, 513 U.S. 106, 111-12 (1994) and California v. Grace Brethren Church, 457 U.S. 393, 416 (1982). This is not the case.

The California v. Grace Brethren Church decision (hereinafter Grace Brethren) imposes three strict conditions on a pay-first system that Defendants have conveniently overlooked. It states:

> "No court of equity will ... allow its injunction to issue to restrain [state officers collecting state taxes], except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, ... before the aid of a court of equity can be invoked."29 California v. Grace Brethren Church, 457 U.S. 393, 412, 102 S. Ct. 2498, 2510, 73 L. Ed. 2d 93 (1982).

It can be seen that the Grace Brethren decision means exactly the opposite of what Defendants say it does. The decision imposes three separate tests on a pay-first system to protect citizens from abuse.  Each of the three restraints is discussed:

The first test under the Grace Brethren decision states that a pay-first system may be restrained by a Federal court "where it may be necessary to protect the rights of the citizenry whose property is taxed, and he has no

61

adequate remedy by the ordinary processes of the law." Plaintiff asserts that he falls into this category. His rights require protection from a notoriously abusive behavior of Defendants yet as a Florida resident he lacks "adequate remedies by the ordinary processes of the law." Note that the threshold of this decision only refers to a situation where it "may be necessary"- a low bar indeed. Clearly, any reasonable concern that a citizen may suffer abuse triggers this test. Therefore, based on this test under the Grace Brethren decision, this Court must restrain the abusive pay-first predations of Defendants.

The second test under Grace Brethren is that Federal intervention to curb pay-first abuses by State tax agencies is warranted when "the enforcement of the tax would lead to a multiplicity of suits." The abusive behavior of Defendants exceeds this threshold by a mile. No State tax agency has generated "a multiplicity of suits" like the Franchise Tax Board has with their pay-first asset seizures. The FTB's notorious tactic of stealing assets down to the last penny disguised as a "pay-first" system has created more litigation than all the other 49 state tax agencies combined. The FTB has been before the Supreme Court more times than all the other 49 states combined due to their theft of assets under the guise of a pay-first system, to include Hyatt v. Yee and Arizona v. California. The FTB has clogged the court system with "a multiplicity of suits" and far

exceeded that threshold. On that test alone this Court must restrain their harmful behavior.

The third test under Grace Brethren that warrants Federal intervention to restrain abusive State pay-first taxation is that the pay-first system risks "producing irreparable injury" to the taxpayer. Clearly the conduct of Defendants has produced irreparable injury in Plaintiff and many others so situated. The Franchise Tax Board is notorious for stealing every dollar a citizen owns down to the last penny. When the FTB issues its fraudulent confiscation orders, they demand every penny in an account. It is not a question of a few hundred dollars for an overdue property tax bill.  The FTB takes everything.

It is difficult to explain the destruction that occurs when every penny is stolen, and Plaintiff prays the reader will never have to go through it themseleves.  Everything collapses, and life becomes a tense fight for survival as resources dwindle. Much of the harm is permanent. The victim of this sadistic FTB behavior will never be the same again.

Clearly there is a difference between confiscating a few dollars, and taking everything a victim owns. The latter will certainly "produce irreparable injury." On this test under the Grace Brethren decision, this court must enjoin the FTB's behavior.

The  "irreparable  injury" wording of Grace Brethren was taken from Dows v. City of Chicago, 78 U.S. 11 Wall. 108 108 (1870). Dows v Chicago left open the "irreparable injury" exclusion also the lack of adequate remedy exclusion. The Dows decision provides another layer of restraint on pay-first systems.

Defendant's reliance on Reich v. Collins, 513 U.S. 106, 115 S. Ct. 547, 130 L. Ed. 2d 454 (1994) is also fruitless. That decision held that the denial by a state court of recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is "in contravention of the Fourteenth Amendment, the sovereign immunity states traditionally enjoy in their own courts notwithstanding." Clearly, no State is allowed to abrogate the 14th Amendment under the flimsy excuse of the Tax Injunction Act.

The United States Tax Court does not permit a pay-first system in any case brought before it.  If this Court is chosen, the taxpayer does not have to pay the disputed tax prior to litigation.  [13] If the highest Federal tax court in the nation does not permit pay-first systems on Constitutional grounds, they should not be tolerated at the State level either.

## Hillsborough Decision Grants Jurisdiction

---

13   Marquette University Law School https://libraryguides.law.marquette.edu/c.php?g=318579&p=2127548

The decision in Hillsborough Twp., Somerset Cnty., N.J., v. Cromwell, 326 U.S. 620, 629, 66 S. Ct. 445, 451, 90 L. Ed. 358 (1946) (hereinafter Hillsborough) eliminates any question of whether Plaintiff's suit enjoys Federal jurisdiction in this Court and whether the Tax Injunction Act is applicable. This Supreme Court decision held that  Federal civil rights  abuses in cases of  taxation confer Federal status to State tax questions and eliminate any question of Tax Injunction Act protection.

The Hillsborough decision confirmed the inherent Federal jurisdiction in State tax cases in which civil rights abuses are alleged.  It stated "the Equal protection clause of the Fourteenth Amendment protects individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class."

Plaintiff's Complaint alleges violations of the 14th Amendment, so it is covered by the Hillsborough decision on those grounds. However, by determining that 14th Amendment questions conferred Federal jurisdiction to State tax cases, it follows that any Constitutional question confers jurisdiciton under the Hillsborough decision, because no Constitutional amendment is more senior to any other. The Hillsborough decision held that the jurisdiction of the Federal court is determinable by the Federal nature of the allegations of the complaint- namely, civil rights abuses.

The Hillsborough decision stated:

"'A remedy at law cannot be considered adequate so as to prevent
equitable relief, unless it covers the entire case made by the bill in equity.'
Though the availability of a state remedy on the local law question be
assumed to exist, so much uncertainty surrounds the New Jersey remedy
to protect the taxpayer's federal right that a refusal to dismiss the bill was a
proper exercise of discretion."[14]

Note: the term Bill is used to refer to a Complaint, as was the custom in 1946.

Clearly the Hillsborough decision confirms the jurisdiction of this Court.

## The Doctrine of Comity Is Not Applicable

Defendants have disingenuously invoked the doctrine of comity to shield

their horrific behavior. They have stated in effect "We wish to rob and pillage the

citizens of other States, and be shielded by the doctrine of comity." That

argument fails on multiple fronts.

Defendants have improperly relied on Fair Assessment in Real Est. Ass'n.

Inc. v. McNary, 454 U.S. 100, 114, 116 (1981) to assert their argument for comity.

Yet this decision states the polar opposite of what Defendants claim it does. The

decision states:

" But even assuming that Fair Assessment bears on this case, comity does
not bar federal jurisdiction here. The Court has explained that the "plain,
adequate, and complete" requirement in the comity analysis is identical
to the "plain, speedy and efficient" requirement under the Tax Injunction
Act. Id. at 116 n.8, 102 S.Ct. 177. Since the Act does not bar the federal

---

14  Hillsborough Twp., Somerset Cnty., N.J., v. Cromwell, 326 U.S. 620, 623, 66 S. Ct. 445, 448, 90 L. Ed. 358
    (1946)

district court from exercising jurisdiction over this challenge, neither does the principle of comity."

It can be seen that the determinants for comity are the same as the determinants for the "plain, speedy, and efficient" threshold of the Tax Injunction Act. Any argument in favor of the TIA has been well disposed for multiple reasons in this Amended Complaint; to describe California tax courts as "plain, speedy, and efficient" is laughable. Because no argument in favor of the Tax Injunction Act exists, no argument in favor of comity exists either.

The doctrine of comity was also rendered inapplicable in this case by the decision in Matthews v. Rodgers, 284 U.S. 521 (1932) (hereinafter Matthews) which held that comity only exists where the rights of citizens of one State are protected in another State. The Matthews decision held that:

> "'The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.'"[15]

Comity may only be observed "where the asserted federal right may be preserved without it." Clearly, Federal rights may only be asserted in Federal court, and Plaintiff is unable to preserve his rights in the instant action without resort to this Federal court.

---

15Matthews v. Rodgers, 284 U.S. 521 (1932)

Defendants have incorrectly asserted the doctrine of comity based on the case of Levin v. Commerce Energy, Inc. 560 U.S. 413, 417 (2010) (hereinafter Levin). However, that case says exactly the opposite of what Defendants say it does.  The Levin decision held that Federal courts should dismiss State tax cases "only where (1) no "fundamental right or classification that attracts heightened judicial scrutiny"is at stake." [16]

The Levin decision contains two tests, both of which confer jurisdiction to this Court. The Levin decision referred to "fundamental rights" and also to "classification that attracts heightened judicical scrutiny," with these two factors clearly separated by the word "or." By definition, Constitutional rights are "fundamental rights" as described in Levin. Plaintiff's claim asserts Constitutional rights and is therefore entitled to jurisdiction under Levin.

The Levin decision also referred to "classification that attracts heightened judicial scrutiny." Plaintiff believes that the outrageous conduct of Defendants that goes far beyond ordinary tax disputes constitutes "classification that attracts heightened judicial scrutiny." Under both tests of Levin, Plaintiff has standing in this court.

The case of Harper v. Virginia Dep't of Tax'n, 509 U.S. 86, 113 S. Ct. 2510, 125 L. Ed. 2d 74 (1993) (hereinafter "Harper) also confers jurisdiction to this

---

[16] Levin v. Commerce Energy, Inc. 560 U.S. 413, 417 (2010)

Court. The Harper case decided that Plaintiffs always have access to Federal due process in State tax cases and that their rights may not be confined to a "lesser remedy." It stated:

> "State law may provide relief beyond demands of federal due process, but under no circumstances may it confine petitioners to lesser remedy."

Plaintiff asserts that any attempt to deprive him of his right to assert Federal claims would "confine petitioners to a lesser remedy" per Harper.

The doctrine of comity is also negated under Adjei v. Mayorkas, 59 F.4th 659 (4th Cir. 2023) (hereinafter Adjei). This decision stated that:

> ""Comity" is the recognition one sovereign extends to the acts of another, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws."[17]

Comity does not obligate a State to let its citizens be abused by a foreign State. It is a reciprocal relationship. Per Adjei, the State of Florida is entitled to safeguard "the rights of its own citizens... who are under the protection of its laws" from the depradations of California.

The doctrine of comity is not absolute, and it is not a blank check for abuse. "Although comity requires federal courts to exercise extreme caution in interfering with state litigation, federal courts have the power to do so when

---

17Adjei v. Mayorkas, 59 F.4th 659 (4th Cir. 2023)

their jurisdiction is threatened" In re Volkswagen "Clean Diesel" Mktg., Sales

Pracs., & Prod. Liab. Litig., 229 F. Supp. 3d 1052 (N.D. Cal. 2017), enforcement

granted, No. 2672 CRB (JSC), 2017 WL 914066 (N.D. Cal. Mar. 6, 2017).

In toto, the arguments presented by Defendants present a very dystopian

view of America. Defendants claim they have the ultimate and unchecked

power to seize anything they want, at any place or time, with no restrictions on

their conduct whatsoever and no avenue of redress. That would be a very scary

world to live in, and we know instinctively that it is not true. We also know as a

matter of law that it is not true, because the Constitution provides very adequate

buffers against such depraved behavior.

### Gavin Newsom Has Negated Comity By "Declaring War" On Florida

As stated in the Adjai decision and elsewhere, the doctrine of comity is

based on mutual respect between sovereigns. However, Defendant Gavin

Newsom has negated that mutual respect by effectively "declaring war" on

Florida. By negating the mutual respect that underpins comity, he has undercut

the fundamental backstop of comity between the states of California and Florida.

In an action perhaps unprecedented in American history, Defendant Gavin

Newsom, the Governor of California, is actively attempting to arrest Florida

Governor Ron DeSantis and has instructed his Attorney General and Department

of Justice to begin drawing up charges and arrest warrants.

On June 5 2023 Defendant Gavin Newsom sent the following Tweet to Florida Governor Ron DeSantis threatening DeSantis with arrest under California state law:



Defendant Gavin Newsom is currently working with his Attorney General and Department of Justice to arrest Governor Ron DeSantis under California state law, not Federal law, thereby attempting to place Governor DeSantis under California state jurisdiction.

71

Defendant Gavin Newsom's Tweet, and the others backing it, were clearly understood to be threats to arrest Florida Governor Ron DeSantis. There is no ambiguity, and Defendant Newsom has instructed Defendant California Department of Justice to investigate issuing an arrest warrant for Florida Governor DeSantis. Defendant California Attorney General Rob Bonta has confirmed that he is ""evaluating potential criminal or civil action" against Florida Governor Ron DeSantis. [18]

Defendant Gavin Newsom is attempting to arrest Florida Governor Ron DeSantis under California state law, not Federal law. "As to specific charges and laws that may have been violated, that will ultimately be determined by the attorney general's office," Newsom spokesperson Daniel Lopez wrote,[19] referring to the Calfiornia State Attorney General. Clearly, Governor Newsom is asserting California state control over the State of Florida.

This wasn't just a petulant tweet to be sent and forgotten. It was backed by State action at the highest level: orders from Defendant Newsom to his Attorney General and his Department of Justice to devote their full resources to prepare for the arrest and incarceration of Florida Governor Ron DeSantis under

---

18  "Newsom threatens DeSantis with kidnapping charges after migrants flown to Sacramento" Los Angeles Times, June 5 2023 https://www.latimes.com/california/story/2023-06-05/newsom-desantis-migrant-flights-kidnapping-charges

19  Gavin Newsom wants Ron DeSantis charged with 'kidnapping' migrants. Is that possible? Cal Matters, June 6 2023, https://calmatters.org/justice/2023/06/gavin-newsom-migrant-flights/

California state law, using California state power to deprive Florida Governor
DeSantis of his liberty.

Defendant Newsom clearly threatened Florida Governor Ron DeSantis
with arrest and has begun the official process of effecting that arrest, and there is
no ambiguity or walking it back. The threat was understood by all who read it.
For example, the following headlines reported:

> "Newsom threatens DeSantis with kidnapping charges after migrants
> flown to Sacramento" Los Angeles Times, June 5 2023

> "Gavin Newsom wants Ron DeSantis charged with 'kidnapping' migrants.
> Is that possible?" Cal Matters, June 6 2023

> Could Ron DeSantis Face Kidnapping Charges Amid Bitter Gavin
> Newsom Feud? Newsweek, June 7 2023

Many more such articles were written, and Defendant Gavin Newsom also
confirmed the intentions of his tweet in verbal interviews with news reporters.

The flights from Florida to Sacramento were operated by Florida's Division
of Emergency Management, a Florida state agency.[20] They therefore should have
been entitled to the full immunity and privileges accorded to the State of Florida.

In threatening to arrest Florida Governor Ron DeSantis, Defendant Gavin
Newsom not only waived any notion of comity, he waived any restrictions  on
personal jurisdiction. He showed that he is personally deeply involved with

---

20   "Gavin Newsom wants Ron DeSantis charged with 'kidnapping' migrants. Is that possible?" Cal Matters, June 6
2023, https://calmatters.org/justice/2023/06/gavin-newsom-migrant-flights/

Florida affairs and seeks to influence, participate in, and control what happens in Florida, to include Florida law enforcement.

Defendant Gavin Newsom and other Defendants have also violated the doctrine of comity and surrendered to Florida's personal jurisdiction by traveling to Florida, becoming involved in Florida's affairs, and conducting their own affairs in Florida. For example, Defendant Gavin Newsom has repeatedly traveled to Florida, has sought to exert his authority in Florida, has become involved with Florida affairs, and has fundraised in Florida.

Defendant Gavin Newsom views Florida not as a sovereign State but as a mere extension of California. For example, he sought to exert control over the Florida Department of Education and private Florida textbook companies merely for what they had legally done in Florida:

> "In May, Newsom directed his staff to demand records from Florida education officials over the Sunshine State's successful campaign to convince social studies textbook publishers to change their content. Newsom also asked more than a dozen educational publishers to explain whether and how they changed their textbooks under pressure from Florida Republicans, warning in a letter that California would "not be complicit in Florida's attempt to whitewash history through laws and backroom deals."[21]

Defendant Newsom and other Defendants also routinely travel to Florida:

> "The governor (ed. Gavin Newsom_ regularly describes this conflict as an existential fight over democracy, and he traveled to DeSantis' state (ed.

---

21  'Pathetic man': The California-Florida rivalry just exploded, Politico, June 6 2023
 https://www.politico.com/news/2023/06/06/gavin-newsom-ron-desantis-feud-00100320

74

Florida) in April to meet with students at New College, a small liberal arts college in Sarasota that DeSantis has transformed into a conservative institution — and then fundraised off of his visit."[22]

Defendant Gavin Newsom and other Defendants travel to Florida routinely and often, conducting business and participating extensively in the affairs of Florida in both the government and private sector, thereby subjecting themselves to Florida personal jurisdiction.

The principle of comity is based on mutual respect and goodwill. However, Defendant Gavin Newsom has made a full-time job out of attacking and insulting the State of Florida (separate from his current legal attempt to incarcerate the Governor of Florida). Defendant Governor Newsom has attacked, belittled, and insulted Florida relentlessly, singling the State of Florida out for a tirade of abuse. Defendant Newsom has attacked Florida on the subjects of gun rights, school textbooks, education, LGBTQ+ rights, Drag Queen Story Hour, and any other subject. Defendant Gavin Newsom has repeatedly used the unofficial moniker of the State of Florida as "The Freedom State" in a perjorative and demeaning fashion. In doing so, Defendant Newsom has eliminated any notion of "comity" between Defendants and Florida.

The notion of comity is further demolished by the fact that Defendant Rob Bonta, Attorney General for the State of California, has banned official State

_____

22  Ibid

travel from California to Florida[23] (although Defendant Governor Newsom appears to be exempt from this ban as he travels frequently to Florida.) This essentially amounts to an economic boycott- a cassus belli. It proves two things: that any notion of comity between California and Florida is demolished, and that California officials including Defendants were traveling regularly to Florida prior to the ban and during the time they attacked Plaintiff, which establishes personal jurisdiction over them in Florida.

Gavin Newsom has also run television ads that appear only in Florida, attacking and insulting the State of Florida and attempting to involve himself in Florida affairs. These TV ads do not appear in any other State, but only in Florida.[24] These ads constitute a special involvement with Florida and activity in Florida that negates the doctrine of comity and also imposes personal jurisdiction.

In toto it appears that the State of California has effectively declared war on the State of Florida. Plaintiff believes that the attacks by the California Franchise Tax Board on private Florida citizens are a part of this warfare- to steal money from the enemy and plunge their lives into chaos.

---

23   "California Bans State Travel To Florida And 4 Other States" Associated Press, June 29 2021
      https://www.npr.org/2021/06/29/1011253354/california-bans-state-travel-to-florida-and-4-other-states-lgbtq

24 "Gov. Newsom's Cringeworthy Florida Ad Shows us His Hubris" California Globe, July 4 2022
https://californiaglobe.com/articles/gov-newsoms-cringeworthy-florida-ad-shows-us-his-hubris/

**California Franchise Tax Board Taxes Florida Residents And**

**Conducts Business In Florida**

The California Franchise Tax Board routinely taxes residents of Florida, so much so that it has set up formal policies and procedures for doing so.

On October 5, 2022 Defendant California Franchise Tax Board published an extension of filing time for Florida residents to pay California taxes based on Hurricane Ian, a hurricane that only impacted the State of Florida. Defendant California State Controller Betty Yee said:

> "This offers relief to taxpayers who were victims of Hurricane Ian and have a California filing requirement," said State Controller and FTB Chair Betty T. Yee. "For some, this will mean several additional months to file their California tax returns or make their quarterly estimated tax payment to the state."[25]

Hurricane Ian impacted the State of Florida and only the State of Florida. It did not impact California. It shows that Defendants believe Florida citizens are their taxable subjects and that Defendants monitor and participate in Florida issues, negating any arguments of personal jurisdiction.

Plaintiff believes that Defendants have routinely issued tax guidance such as the above to Florida residents based on hurricanes that only affect Florida.

A recent petition before the Supreme Court indicates that the State of California may be illegally taxing thousands of Floridians each and every year.

---

25  "California Grants Tax Relief To Hurricane Ian Victims" October 5 2022, Florida Institute of Certified Public Accountants https://www.ficpa.org/publication/california-grants-tax-relief-hurricane-ian-victims

In the case of Arizona v. California (2019) the State of Arizona petitioned the Supreme Court for leave to file a complaint about the extraterritorial and abusive tax practices of the State of California. [26] Plaintiff incorporates the entirety of the Arizona Bill of Complaint into his Complaint by reference and joinder.

The allegations made by the State of Arizona independently confirm the allegations made by Plaintiff in his Complaint, demonstrating that California has embarked on an extraterritorial and illegal program of taxing citizens coast to coast, including Arizona. The first paragraph of the Bill of Complaint states:

> 1. This is a challenge to California's extraordinarily aggressive policy of extraterritorial tax assessment and enforcement, which tramples over state borders and flouts well-established constitutional precedents of this Court. California's actions violate the Due Process Clause of the Fourteenth Amendment (hereinafter, "Due Process Clause"), the Commerce Clause, and the Fourth Amendment. These constitutional violations inflict substantial harm on Arizona.[27]

The Arizona Bill of Complaint alleges that the State of California and Defendants are carrying out over 100,000 illegal cross-border seizures with no due process each and every year.  It states that Defendants are carrying out over 13,000 illegal seizures per year in the State of Arizona alone.

---

26   Bill of Complaint, State of California v. State of Arizona 2019

27   Ibid.

Florida has a population of 22 million, equaling 6.6% of the total United States population of 332 million. If the State of California is carrying out 100,000 illegal seizures per year, it follows that approximately 6.6% of them, or 6,600, occur in the State of Florida on a population-weighted basis.

Plaintiff believes that California maintains an extensive and ongoing practice of taxing Florida residents, and therefore Defendants do not enjoy any lack of personal jurisiction in Florida as they have established a taxation program in Florida.

The Arizona Bill of Complaint correctly notes that warrantless seizures are presumptively unlawful. Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971) (warrantless seizures are per se unreasonable unless an exception applies) and Plaintiff so asserts in his Complaint.

Plaintiff intends to prove at trial the existence and extent of the program of California taxing Florida residents by the discovery process.

### Arizona Bill of Complaint Describes Sickening Abuse

The Bill of Complaint filed by the State of Arizona with the Supreme Court describes a sickening program of illegal extraterritorial abuse by the State of California that almost exactly mirrors the allegations Plaintiff has made in his Complaint. It describe a widespread California program of purely criminal gangsterism and naked theft- of simply stealing assets from victims by brute

79

force, without any pretense of justification, just as Plaintiff has alleged.  They

prove Plaintiff's claims of negligence by Defendants DOJ and FBI when Plaintiff

reported this interstate theft and abuse to them.

The Arizona Bill of Complaint states:

"6. California's constitutional violations do not end with the
Extraterritorial Assessments, however. If those assessments are not paid
voluntarily, California dials its incursions into other states up to eleven.

7. Lacking personal jurisdiction over the out-of-state companies, California
cannot employ its courts to enforce its Extraterritorial Assessments. And it
is apparently unwilling to invoke the jurisdiction of courts in other states
that actually do possess personal jurisdiction over the out-of-state
companies.

8. Rather than employ any judicial process, California locates moneys in
out-of-state bank accounts for the pertinent companies and simply sends
the relevant banks ultimatums: transfer the funds to California or the state
will extract the same amounts from the banks instead (hereinafter,
"Seizure Orders," and where successful, "Extraterritorial Seizures"). The
Seizure Orders are issued ex parte, without any warrant or the
involvement of judicial officers, and expressly preclude banks from
seeking judicial review. And California neither seeks the consent of the
state from which the moneys are seized nor provides them notice.
9. These Seizure Orders—backed by the awesome force of the largest state
economy in the United States, as well as California's aggressive regulatory
leviathan—are remarkably successful in coercing banks to transfer their
customers' moneys to California."

The Arizona Bill of Complaint outlines a California program of purely illegal

theft carried out across state lines. It describes a shocking program of emptying

bank accounts, robbing citizens and destroying lives without a hint of due process. This is not a tax program: it is criminal economic terrorism.

### Supreme Court Grants Plaintiff Jurisdiction

The Supreme Court did not grant certiorari to the Arizona Bill of Complaint in Arizona v. California, but not because it lacked merit.

The Supreme Court was advised in an amicus brief by the Solicitor General that the original jurisdiction of the Supreme Court should be invoked sparingly, and the Supreme Court should consider "whether there exists an alternative forum "in which the issue[s] tendered" to the Court " 'may be litigated.'" Mississippi, 506 U.S. at 77.

The amicus brief recommended that because the controversy occurred between the State of California and private victims in Arizona, the private victims would be "the most natural plaintiffs" to file suit against the State of California.

By adopting the recommendation of the amicus brief of the Solicitor General, the Supreme Court in effect granted Plaintiff, as a private party and therefore "the most natural plaintiff" the right to sue.

## Personal Jurisdiction

Defendants have actively submitted themselves to the in personem personal jurisdiction of this Court, and established minimum contacts far in excess of those required for personal jurisdiction.

Defendants have engaged in a wide range of tortious conduct against Plaintiff and many others in Florida that is the subject to Florida's long-arm statute. Defendants have harassed Plaintiff, slandered Plaintiff, threatened Plaintiff, caused stress for Plaintiff, and communicated with Plaintiff telephonically and via email in Florida.

Defendants have created and issued false invoices, levies, and confiscation orders for Plaintiff's assets domiciled Florida. Defendants fully intend to steal Plaintiff's assets domiciled in Florida the moment the protective veil of the instant Court proceedings are concluded.

Defendants have caused Plaintiff to become stressed, concerned, and worried in Florida as a result of their ongoing illegal conduct. Every single day Plaintiff wakes up in Florida and has a moment of stress checking to see if his assets are still in his bank account. Plaintiff knows that one day, they won't be, and he will be left destitute once again by Defendants. The psychological and emotional stress, worry, and damage that Defendants have inflicted and

continue to seek to inflict on Plaintiff constitutes a toritous act in the State of Florida.

Defendants have routinely traveled to Florida. Defendants have established a broad-scope taxation system of Florida residents, so much so that they have issued tax delay notices in the wake of Hurricane Ian and other natural disasters that only affected the State of Florida.

Defendants cannot be active in Florida, stealing money in Florida, operating a large scale taxation program in Florida, committing crimes in Florida, committing torts in Florida, working to arrest the Governor of Florida, and then claim to be exempt from Florida jurisdiction.

Defendants coordinated extensively with Defendants FBI and DHS, to include conferring on various Task Forces, which confers Federal jurisdiction on the actions of all Defendants in the commingled joint task force.

Defendants have actively participated in legal proceedings in Florida in the instant action and in other actions, and sought pro hac vice admission to the Florida bar in the instant action and in other actions.

Defendants have opened physical offices in other States including Texas, New York, and Illinois. They may have opened such an office in Florida.

Defendants are subject to the personal jurisdiction of this Court pursuant to a cause of action in ths Complaint under 18 U.S.C. Chapter 96 et seq. (the

"Racketeer Influenced and Corrupt Organizations Act") which confers personal

jurisdiction anywhere in the United States. Section 1965(b) of RICO grants

personal jurisdiction to this Court, stating:

> RICO Section 1965(b)
> In any action under section 1964 of this chapter in any district court of the
> United States in which it is shown that the ends of justice require that other
> parties residing in any other district be brought before the court, the court
> may cause such parties to be summoned, and process for that purpose may
> be served in any judicial district of the United States by the marshal
> thereof.

Section 1965(d) allows process to be served "in any judicial district in which

such person resides, is found, has an agent, or transacts his affairs." Accordingly,

courts have approved nationwide service of process under both § 1965(b) and §

1965(d). Lisak v. Mercantile Bancorp, Inc., 834 F.2d 668. (7th Cir. 1987) abrogates

the issue of personal jurisdiction in civil RICO cases entirely, concluding that

minimum contacts with the forum state are unnecessary in federal question cases

such as those arising under RICO because the court is exercising the judicial

power of the United States, rather than that of an individual state.

Heller v. Deutsche Bank AG 2005 WL 281181(hereinafter Heller) held that

in a civil RICO claim personal jurisdiction can be based either on general

(continuous and systematic) or claim-specific contacts with the forum. According

to Heller, even a single claim-specific contact is sufficient to confer personal

jurisdiction under RICO when the defendant injures the plaintiff through

activities purposely directed at residents of the forum state and the defendant does not present a compelling case that such jurisdiction is unreasonable.

Plaintiff asserts that Heller confers personal jurisdiction under both the standard of continuous and systematic contact, and separately under the standard of individual contact, by Defendants with Plaintiff and with the State of Florida.

Defendants have established personal jurisction in Florida under the "effects test" of Calder v. Jones, 465 U.S. 783 (1984), in cases with insufficient interactivity or minimum contacts, but where an action is targeted at a particular forum. The court found that personal jurisdiction was properly established because of the effects of the defendants' conduct were felt in that state.

### Florida Long Arm Statute

Florida Statutes Section 48.193, commonly referred to as the Long Arm Statute, states:

48.193   Acts subjecting person to jurisdiction of courts of state.—

(1)(a)   A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
1.   Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
2.   Committing a tortious act within this state.

(2)   A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Plaintiff asserts that Defendants are subject to the Florida long arm statute as their extensive activities related to taxation in the State of Florida and other acts constitute "operating, conducting, engaging in, or carrying on a business or business venture in this state" pursuant to Florida Statute 48.193(1)(a)(1).

Plaintiff asserts that Defendants are subject to the Florida long arm statute as each individual incident of their extensive tortious conduct including harassment, theft, intimidation, intentional infliction of emotional distress, negligent infliction of emotional distress, conspiracy, and other causes of action in this Complaint constitute "a tortious act" pursuant to Florida Statute 48.193(1)(a)(2), which each individual separate tortious act committed by Defendants to be considered as a separate basis for jurisdiction under the long arm statute.

Plaintiff alleges that Defendants have engaged in "substantial and not isolated activity" within this state pursuant to Florida Statute 48.193(2) by operating an extensive taxation regime in the State of Florida, by their activities directed at Plaintiff, by their activities directed at other Floridians, and their other activities in the State of Florida.

Plaintiff asserts that each Defendant is liable for the conduct of their subordinates and subject to the Florida long arm statute pursuant to Florida Statute 48.193(1)(a) which establishes jurisdiction for conduct carried out "personally or through an agent."

## Franchise Tax Board Has Engaged in Domestic Terrorism Pursuant to 18 U.S. Code § 2331(5)

Domestic terrorism is a serious charge and one that Plaintiff does not make lightly, but only after careful study of the applicable law and facts.

There is no question that the conduct of the Franchise Tax Board meets the commonly understood definition of "terrorism." Many victims of FTB brutality would agree that the FTB behaves in a deliberately terroristic fashion, and some of these accounts are included in this Complaint.

Plaintiff asserts that the actions of Defendants in relation to Franchise Tax Board activity meets the legal threshold of 18 U.S. Code § 2331(5), "Domestic Terrorism" which states:

> (5) the term "domestic terrorism" means activities that—
> (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State;
> (B) appear to be intended—
> (i) to intimidate or coerce a civilian population;
> (C) occur primarily within the territorial jurisdiction of the United States

Plaintiff asserts that the brutal actions of the Franchise Tax Board are "dangerous to human life (and) are a violation of the criminal laws of the United States or of any State" within the meaning of 18 U.S.C. § 2331(5)(A).

The predicate acts of the FTB when stealing money (theft, wire fraud, bank fraud, conspiracy, false documents, etc.) are illegal and "in violation of the criminal laws of the United States or any State" pursuant to 18 U.S.C. § 2331(5) (A).

Plaintiff asserts that emptying the bank account of a victim without warning is inherently and by definition "dangerous to human life" pursuant to 18 U.S. Code § 2331(5)(A) as it deprives the victim of the basics of life such as food, shelter, heat, water, transportation, safety, utilities, clothing, healthcare, baby forumla, medicines, and other items necessary for the maintenance of life.

Being suddenly left with no money is most certainly dangerous to human life; Plaintiff could easily have been killed when he was attacked by the FTB and left with no resources, had a few things gone slightly different.

Plaintiff asserts that the systematic campaign of FTB brutality is designed to "to intimidate or coerce a civilian population" within the meaning of 18 U.S. Code § 2331(5)(B)(i). The FTB has a well documented record of attempting to intimidate or coerce a civilian population in order to perpetrate its fearful

reputation that discourages resistance in its targets and makes the civilian population compliant to FTB theft and abuse.

Although no political motive is required under U.S. Code § 2331(5), Plaintiff believes that the FTB has also intended to intimidate and coerce a civilian population for political ends. Defendant Gavin Newsom is a politically divisive Governor pursuing a highly ideological policy. He likely wishes to use the FTB to target people not politically aligned with him.

The U.S. Senate is holding hearings unprecedented in American history: the Select Subcommittee on the Weaponization of the Federal Government. This Subcommittee is investigating the "weaponization" of Federal agencies including Defendant Department of Justice and Defendant Federal Bureau of Investigation. Plaintiff alleges that he was a victim of the abuse of the "weaponization" of these two agencies on the instructions of the Franchise Tax Board, and that the State of California has also 'weaponized" its own agencies.

### Treasurer Fiona Ma Letter to Defendants

California State Treasurer Fiona Ma sent a letter in 2019 to Defendants Gavin Newsom, Defendants California State Assembly, Defendants California State Senate, and Defendant Marybel Batjer warning of serious abuse and civil rights violations by California state tax agencies wherein the State of California was systematically attacking a large number of victims in other States and

emptying their bank accounts. [28] The time frame of the conduct alleged in the letter to Defendants was conterminus with the abuse Defendants were inflicting on Plaintiff.

In this letter, which she made public, Treasurer Ma described abusive and illegal practices carried out by Defendants across State lines that mirror Plaintiff's allegations.

The California State Treasurer is an elected officer of the State of California and one of the highest level public officials in the State. It is unprecedented that a letter alleging such grave violations and criticizing Defendants by name would be sent from such a high-ranking public official to Defendants and simultaneously made public by that official.  The letter clearly put Defendants on notice of their abhorrent behavior. The letter should have resulted in immediate remedial and corrective action action taken by Defendants. Instead, it was ignored.

Treasurer Ma repeatedly describes these California state tax practices as "unlawful, unconstitutional, and impractical." The practices were described as "unlawful and unconstituitonal" three separate times in the letter.  Treasurer Ma also described the terror and destruction wrought on innocent victims of this illegal interstate conduct by Defendants, including victim impact statements.

_____

28  Letter from California State Treasurer Fiona Ma to Defendants 3/8/29

The letter contained a victim impact statement from Mindy Wright, a victim located in Washington State, who said:

> "Now we are facing tens of thousands of dollars in back taxes, penalties and interest. This alone will force us out of business and into bankruptcy. We just do not make much money and we are distraught and frightened."[29]

Mindy Wright conveys a sense of the abject terror and helplessness felt by the victims of Defendants misconduct It is difficult to imagine the bizarre Twilight Zone style situation they faced: minding their own business in their home State when suddenly they are attacked out of the blue by the State of California, demanding they hand over tens of thousands of dollars- their life savings- or go to prison.

The victim impact statement from Mindy Wright describes feeling "distraught and frightened." Plaintiff asserts that these words describe a state of terror, and that this statement buttresses Plaintiff's claims that Defendants have engaged in terroristic activity pursuant to 18 U.S. Code § 2331(5) "Domestic Terrorism."

Astonishingly, the Fiona Ma letter states that the State of California threatened victims with felony prosecution and imprisonment, despite having no legal grounds for doing so. Plaintiff asserts that the act of threatening citizens with felony charges and impisonment without legal basis was designed to strike

---

29  Ibid.

fear into them and constitutes terroristic activity pursuant to 18 U.S. Code § 2331(5) "Domestic Terrorism."

In her letter, California State Treasurer Fiona Ma correctly identifies Defendant Governor Gavin Newsom as the correct final authority to end these abuses, and correctly identifies the operational role other Defendants play in the abuses as well. Treasurer Ma stated:

"Therefore, I respectfully requst you direct CDTFA to cease this activity...

Your ability to do so is plain and unmistakable. Under Article V, Section 1 of the California Constitution, "the supreme executive power of this State is vested in the Governor. The Governor shall see that the law is faithfully executed. " Government Code Section 12010 specifically provides: "The Governor shall supervise the official conduct of all executive and ministerial officers." As you know, the CDTFA answers to you directly through the California Government Operations Agency (ed: Defendant). Your authority to intervene is clear."[30]

The letter from California State Treasurer Fiona Ma clearly identified the conduct of Defendants as an "error" and a violation of the "integrity of the tax system" that should be "corrected." It stated:

"As a former Member of the FTB Board (ed. Defendant) and former Member/Chair of the State Board of Equalization, I know that it is important to the integrity of the tax system that when an error by the state is identified, it should be corrected."[31]

---

30  Ibid.

31  Ibid.

The letter from Fiona Ma proves conclusively that Defendants had been put on notice by an authoritative source, the Treasurer of the State of California, that their conduct was heinous, damaging, illegal, and unconstitutional.  It also demonstrates a widespread pattern of Defendants engaging in terroristic activity to get what they wanted, in violation of 18 U.S. Code § 2331(5) "Domestic Terrorism." Plaintiff believes that other such letters and evidence likely exist, and intends to use the discovery process to uncover them.

## California Would Not Be "Thrown Into Disarray"

Defendants have spuriously claimed that if this Court were to direct the State of California to follow the law and respect Constitutional rights, it would cause California's tax system to be "thrown into disarray" per the Grace Brethren decision. This claim is melodramatic and without legal merit.

As a matter of first order, California has no choice but to follow the law and respect Constitutional rights. It is not optional. If California is breaking the law and trampling Constitutional rights then they and they alone bear any responsibility for any resultant "disarray."

Following the law would not throw California into disarray. The changes requested by Plaintiff are actually quite minor: treat people fairly. Give them proper notice. Respect the 4th Amendment. It shouldn't be hard for Defendants to do. If anything, these steps would dramatically improve the functioning of the

93

California tax system by making it more efficient and productive and avoiding the morass of litigation that follows the FTB everywhere it goes.

Every other State seems to operate a tax system that reasonably attempts to respect Constitutional rights, and none of those States have been "thrown into disarray."

Plaintiff's claims for relief are separate from the allegations in the Complaint, and the claims for relief are not a basis to dismiss the Complaint.  The validity of the Complaint is not dependent upon the nature of the claims for relief sought. The claims for relief may be granted, not granted, or partially granted. The Court may even formulate and impose its own relief. The claims for relief contained in the Complaint have no bearing on whether the Complaint should be heard- only on the relief that might be granted at the conclusion.

### Plaintiff Risks Ongoing Harm

The most serious untruth in Defendants' Motion to Dismiss is that Plaintiff lacks Article III standing to sue because there is not a "substantial likelihood that Plaintiff will suffer injury in the future." This is a misrepresentation by Defendants to cover their own behavior and an attempt to seriously mislead this Court, for which Defendants should be sanctioned.

Plaintiff has suffered tremendous harm every day since the initial Franchise Tax Board attacks, and continues to do so, because the Franchise Tax

Board has continued to threaten Plaintiff with attacks. Despite Plaintiff's numerous attempts to resolve this situation, the Franchise Tax Board has refused to clear the phony "debt" it levied on Plaintiff. To the contrary, the Franchise Tax Board has sent Plaintiff notices demanding still more outrageous sums.  Every minute of every day, Plaintiff is at risk of being attacked  again and having his bank accounts emptied, and all the devastation that entails. Every day, Plaintiff checks his bank balance to see if any money is there, or if this is going to be "The Day" when he is attacked again by the psychopathic FTB.

Plaintiff notes that Defendants did not state in their Motion to Dismiss that Plaintiff faces no ongoing risk of harm. They could have done so, and put the issue beyond any doubt, thus bolstering their legal argument.  However, they chose not to. Instead of stating that Plaintiff faced no risk of further harm, Defendants very carefully choose their words. They state "The complaint does not allege facts that establish that there is a substantial likelihood that plaintiff will suffer injury in the futue." Defendants merely allege that Plaintiff made a clerical oversight in not including the risk of future injury in his complaint, but they don't deny that it exists.

Plaintiff has had to adjust his routine to prepare for the near certainty of another attack by the FTB that would render him penniless and unable to pay for the daily necessities of food, shelter, and communications that sustain life.

95

Plaintiff is required to make sure he has adquate food, water, cash on hand, gas in the tank, and necessities in case he is attacked again and his bank accounts are emptied and frozen by the FTB. Ironically, the FTB's rules allow it to seize "any thing of any value," including physical items, so Plaintiff is even at risk of having his home raided and the food stolen out of his kitchen cupboards.

Plaintiff believes that only his strident pursuit of a legal solution has spared him from being attacked again by the FTB.  If Plaintiff had not clearly communicated to Defendants that a lawsuit was forthcoming, and that they would be held legally liable in their personal and professional capacities, Defendants would have already attacked Plaintiff.

Plaintiff believes that the filing of this lawsuit has granted him a temporary protective shield by this Court. Defendants are unlikely to attack Plaintiff while this matter is still before the Court. The minute this case is resolved, dismissed, or transferred, the Defendants would see that the coast is clear. They would attack Plaintiff instantaneously and take everything he owns, using extra brutality to punish Plaintiff for daring to challenge them in court.

Defendants have also illegally placed a lien on a property owned by Plaintiff. Plaintiff has not had the full use of his property and is unable to sell or refinance it until this lien is removed. Defendants will most certainly attempt to seize this property the moment these court proceedings are complete.

Plaintiff also currently lives under the risk of physical violence or other harm from Defendants. As described elsewhere, Plaintiff was subjected to stalking, harassment, and even a "knock on the door" by Defendants armed with firearms. The risk of another "knock on the door" exists every day.

Plaintiff is not the only victim of FTB abuse who believes that the possibility of violence by Defendants exists. The website "FTB Fighter: Fighting Corruption at the CA Franchise Tax Board" is operated by another victim of FTB misconduct (who is unknown to Plaintiff and Plaintiff has never communicated with) to document her legal battle against the FTB. On her website, this person stated:

> "Note: I am not suicidal, I don't have depression issues, I am a careful driver, I rarely drink alcohol, and I do not use drugs of any kind (not even aspirin). My family lives a wholesome life. If something happens to me or my family that is out of character for us, we were set up by the State of California as revenge for exposing their crimes."[32]

Clearly, Plaintiff is not the only one who believes the Defendants are capable of violence or other dirty tricks to protect what they are doing. It appears the FTB creates this sinister image among all its victims.

---

[32] "FTB Fighter: Fighting Corruption at the CA Franchise Tax Board" https://gwsandiego.net/blog/?p=1049

## "The Evil California Franchise Tax Board" Book

Plaintiff wishes this Court to take judicial notice of the fact that a book was written about the Franchise Tax Board by a victim of FTB brutality. The book is titled "The Evil California Franchise Tax Board." It was written by author Adrian Vance and published on Amazon Books in 2014.[33]

The book "The Evil Franchise Tax Board" details the struggles Mr. Vance faced after being attacked by the Franchise Tax Board and his attempts to get his life back. The book paints a horrifying picture of government abuse that goes beyond mere mistakes or neglect, and into the realm of evil- of deliberately trying to hurt citizens for sadistic pleasure. Mr. Vance is not a professional author, but an ordinary American who was attacked by the FTB and relayed his story.

The introduction of the book mirrors the allegations about FTB misconduct Plaintiff has made in this Complaint. It states:

> "The California Franchise Tax Board is taking money from the accounts of people all over America when they have the same names as people who lived and worked in California with the aid of banks in a scheme that is stealing million, if not billions, of Dollars. We are looking for radio and TV talk show hosts to publicize this criminal enterprise and put and end to it. As well, we would like to find a legal foundation to prosecute a class action for these people and recover what they have lost. Much of this is difficult to read as you learn what the FTB has done to so many people, most of whom are elderly, infirm, wounded veterans and most know not

---

[33] "The Evil California Franchise Tax Board" Adrian Vance Amazon Publishing 2014

what to do, but pay, and pay. This must be brought to and end before run-away government inspires a bloody revolution."[34]

Plaintiff finds it striking, and sad, that a book with this title was written about the California Franchise Tax Board. Usually books with "evil" in the title refer to serial killers, terrorists, or other monsters. It is clear that many Californians feel the Franchise Tax Board falls into the category of "evil" as well- and one wrote a book about it.

### General Liability of Defendants

Plaintiff alleges that each Defendant had in the past, and continues to have a duty of care to the Plaintiff by virtue of their positions as public servants and their oath of office.

Plaintiff alleges that each Defendant is individually liable for each cause of action.  Like any heist, they played different roles- before, during, and after- but they were all involved in the crime and share responsibility for all aspects of the crime.

Each Defendant who is a government official knew fully and exactly about the crimes being committed by all other Defendants at all times. These Defendants are senior government officials with vast resources at their disposal,

---

34  Ibid

including research staff, computer systems, inter-agency briefings, and the whole retinue of tools that go with their power.

Plaintiff further alleges that each Defendant who is a government official knew exactly what was going on at all times because Defendants unlawfully placed Plaintiff under a program of monitoring. For example, when Plaintiff would call the Franchise Tax Board to learn about his dispute, he was told that his tax file and entire history had been "compartmentalized" and could only be accessed by certain FTB agents assigned to monitor Plaintiff.

Likewise, Defendant Betty Yee abused an official privilege of office to monitor Plaintiff: the drivers and bodyguards provided to her by Defendant California Highway Patrol.  She tasked these bodyguards to monitor Plaintiff, surveil Plaintiff, track Plaintiff's movements, and pop up unexpectedly to harass Plaintiff in public places.

Plaintiff believes that Defendants contacted Defendant FBI to urge even more monitoring and surveillance of Plaintiff, despite the FBI having no jurisdiction in the matter. The highly politicized FBI was happy to comply. The FBI and Defendant Victor Keesey even showed up unannounced at a house they believed was associated with Plaintiff to harass and intimidate Plaintiff and interview neighbors. The questions Defendant Keesey asked Plaintiff's neighbors revealed a detailed knowledge of Plaintiff, indicating that the FTB had

committed Privacy Act violations by sharing Plaintiff's private tax information with the FBI.

Defendants expended a huge amount of time and resources to track, monitor, and surveil Plaintiff.  Defendants collectively knew everything that was going on. Because of that, they bear responsibility for everything that took place on their watch.

Plaintiff alleges that the deliberate acts and omissions of the Defendants caused Plaintiff substantial harm.  Plaintiff's funds have still not been returned to him. Plaintiff lives daily under the shadow of another attack by Defendants. Defendants caused and continue to cause this harm knowingly, deliberately, and with ample opportunity for mitigation. Plaintiff further alleges that such harm is ongoing, and that each Defendant is jointly and severally liable for the harm they have caused.

The Defendants occupy positions of tremendous public trust and sensitivity.  They operate outside the public view. They are trusted to carry out their duties with sound judgement, due care, and adherence to the law. The public including Plaintiff relies on the integrity of these Defendants in the performance of their duties.  Because of the sensitivity and importance of these duties, tremendous harm can result when that public trust is violated.

Each Defendant who is a natural person has taken an Oath of Office requiring them to protect the Constitutional rights of citizens.

Each Defendant owed a duty of care to Plaintiff by virtue of the extensive authorities, duties, and responsibilities conferred to them by law.

### Specific Liability of Defendants

Defendant Gavin Newsom serves as the Governor of the State of California, an elected office in the State of California. The Governor exercises significant control over, and responsibility for, the FTB as follows:

The FTB is part of the Executive Branch of the State of California, subject to the direct authority, monitoring, control, and supervision of the Governor. Defendant Newsom personally selects, appoints, and manages the Executive Officer of the FTB. Defendant Newsom personally selects, appoints, and manages the Secretary of the California Government Operations Agency (GovOps), the parent agency of the FTB.

Defendant Newsom personally selects, appoints, and manages the Director of the California Department of Finance, who serves as one member of the three-member FTB. Defendant Newsom personally selects, appoints, and manages the Director of the California Department of General Services (DGS). The DGS has broad authority pursuant to Gov. Code § 14615 for the audit, overisght, and risk management of California state agencies, to include the FTB.

102

Defendant Newsom personally selects, appoints, and manages the Commissioner of the California Highway Patrol (CHP), the agency responsible for investigating all criminal violations that occur on State property or committed by employees of State agencies, to include misconduct of the FTB, and an agency that had been tasked by Defendants with harassing Plaintiff and stifling Plaintiff's free speech.

Defendant Newsom personally selects, appoints, and manages the Secretary of the California State Transportation Agency (CalSTA), the parent agency of the CHP.

Defendant Newsom personally selects, appoints, and manages the California State Auditor (CSA). The CSA is the auditing authority in the State of California, with broad responsibility for auditing and investigating patterns of complaints or allegations of abuse at all California state agencies, including the FTB.

Defendant Newsom personally selects, appoints, and manages the senior officers of the "Office of Tax Appeals", the tax court established by the State of California.

In each of the above-listed responsibilities, Defendant Newsom failed to properly appoint and supervise the critical positions under his control related to delegated authority over the Franchise Tax Board. Defendant Newsom also

failed to properly manage the Franchise Tax Board directly, as he is required to under the California State Constitution. The office of Defendant Newsom ignored multiple complaints from Plaintiff regarding the attacks and abuse from the Franchise Tax Board, and also ignored similar complaints made by other members of the public. Defendant Newsom was completely derelict in his duties.

Plaintiff alleges that Defendant Newsom is directly liable for the following Causes of Action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly
Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant California State Senate is a legislative body of the State of California, comprising the upper house of the bicameral State legislature.  The California State Senate exercises direct oversight of FTB. The California State Senate has numerous oversight Committees with responsiblility for monitoring the FTB.  These include various Standing Committees, Sub Committees, and Select Committees. Political appointees of the Governor who serve in positions related to the FTB are confirmed by the Senate.  Under the Taxpayers Rights Act,

106

the FTB is required by law to present an annual report to the Legislature for examination, review, and corrective action.  Complaints about the FTB from individual victims are frequently directed to lawmakers of the California State Senate.

Defendant California State Senate was grossly negligent in its responsibilities to provide oversight to the FTB. Plaintiff notified Defendant California State Senate numerous times about his complaints. Despite having a mandate to provide oversight to the FTB and almost unlimited power to do so, the California State Senate ignored Plaintiff's numerous complaints and acted to silence and retaliate against Plaintiff.

Plaintiff alleges that the Defendant California State Senate is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of Action by having aided and abetted them.

Defendant Toni Atkins is a State Senator of the State of California, an elected office, and serves as President Pro Tempore of the California State Senate. As such, Defendant Senator Atkins plays a primary role in carrying out the Senate responsibilities described above. Defendant Atkins was notified several times by the Plaintiff about his complaints, but Defendant Atkins took no action. To the contrary, Defendant Atkins appeared to have issued an instruction that the Plaintiff was not to be helped by any member of the Calfifornia State Senate on any matter whatsoever, effectively "blacklisting" the Plaintiff, thereby depriving Plaintiff of his fundamental right to representation, redress, and petition.

Plaintiff alleges that Defendant Toni Atkins is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

110

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant California State Assembly is a legislative body of the State of California, comprising the lower house of the bicameral State legislature.  The California State Assembly exercises direct control and influence over the FTB. The California State Assembly has numerous oversight Committees with responsiblility for monitoring the FTB. These include Standing Committees, Select Committees, Joint Committes, Sub Committees, and Special Committees. Under the Taxpayers Rights Act, the FTB is required by law to present an annual report to the Legislature for examination, review, and corrective action.

Plaintiff reported his concerns to the California State Assembly about matters under their control. Plaintiff reported detailed accounts of the abuse not only of himself, but the systematic abuse that the Franchise Tax Board was engaged in. Defendant California State Assembly did nothing about matters under its control and over which it had influence, and ignored Plaintiff's complaint.

Plaintiff alleges that Defendant California State Assembly is directly liable for the following causes of action:

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Erika Contreras serves as Secretary of the Senate of the California State Senate. As such, she serves as chief legal counsel to the Senate and has responsibility for investigating and remedying complaints made to the Senate regarding the conduct of matters within the Senate's control. Defendant Contreras is an officer of the State of California and is also a licensed attorney and a member of the California State Bar. Defendant Contreras was made aware of the Plaintiff's complaints numerous times, but failed to assist. To the contrary, Defendant Contreras apparently instructed other government officials to also not

to assist the Plaintiff, a conspiracy that violated Plaintiff's civil rights. Plaintiff alleges that Defendant Erika Contreras is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Sheron Violini served as Deputy Secretary of Operations for the California State Senate from the year 2008 until August 2021. In that role, part of Defendant Violini's duties were to assist members of the public with complaints they had about State agencies and State legislators.  Defendant Violini had a wide range of tools and resources at her disposal to accomplish this. Based on her senior position within the California State Senate, Defendant Violini had the almost unlimited resources of the California state government at her disposal to resolve any matter, large or small.  Plaintiff was placed in contact with Defendant Violini to resolve Plaintiff's complaint. Plaintiff had every hope and expectation that Defendant Violini would use her tremendous resources and position of responsibility to assist Plaintiff. However, insted of assisting Plaintiff, Defendant Violini did just the opposite.  Defendant Violini apparently issued or participated

in implementing instructions that no State agency was to help Plaintiff with his complaint or any other complaint he may have in the future, effectively depriving Plaintiff of the entirety of his rights as a citizen.

Plaintiff alleges that Defendant Sheron Violini is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom   Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Fred Zermeno is an employee of the California State Senate. Defendant Zermeno works in the office of Senator Bob Archuleta. Because Senator Archuleta sits on the Senate Committee of Veteran's Affairs, and the Plaintiff is an honorably discharged veteran, Plaintiff contacted the office of Bob Archuleta. Defendant Zermeno used his position not to assist the Plaintiff, but to quash Plaintiff's legitimate complaint under color of law.

Plaintiff alleges that Defendant Fred Zermino is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant California Department of Justice (hereinafter California DOJ) is a State agency of the State of California. It is the apex law enforcement agency of the State, established by Article II of the California State Constitution with a mandate to enforce the law within the State of California. The California DOJ is mandated to enforce the law fairly for all, without favoring politically connected indivduals or agencies. The Calfiornia DOJ has a staff of approximately 4,500 professionals, of which 1,100 are attorneys.  The California DOJ also maintains a Civil Rights division and states that it places an emphasis on enforcing violations of civil rights. Despite this, the Calfiornia DOJ ignored the civil rights complaints of the Plaintiff.  Plaintiff alleges that Defendant California DOJ is directly liable for the following causes of action:

> First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech
>
> Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition
>
> Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process
>
> Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process
>
> Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Attorney General Rob Bonta is the Attorney General of the State of California.  The Attorney General is charged by Article V, Section 13 of the

119

California State Constitution with the duty to ensure that the law is fairly and evenly enforced within the State of California. Pursuant to California Government Code §§ 12500 – 12504, Defendant Bonta is responsible for for enforcing the law in the State of California, to include investigating misconduct at State agencies and investigating civil rights violations. Plaintiff contacted the AG's office to report his complaints, but was ignored.

Plaintiff alleges that Defendant Rob Bonta is directly liable for the following causes of action:

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant California State Transportation Agency (CalSTA) is an agency of the State of California.  CalSTA is the parent agency of California Highway Patrol (CHP), another Defendant in this action. As the parent agency of the CHP, CalSTA has responsiblility for oversight of the CHP.  When the CHP failed to properly investigate FTB misconduct due to its substantial conflicts of interest and financial relationship with the FTB, harassed Plaintiff, and violated Plaintiff's rights of freedom of speech and assembly, Plaintiff notified the CHP's parent agency CalSTA and requested redress. CalSTA ignored Plaintiff's complaint. Plaintiff alleges that Defendant CalSTA is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Secretary Toks Omishaken is the Secretary of the California State Transportation Agency (CalSTA), a position appointed by the Governor. As Secretary of CalSTA, Defendant Omishaken has operational control and responsibility over CalSTA, to include CalSTA's control over Defendant CHP. Plaintiff brought his complaints about the CHP and CalSTA inaction to the attention of the Secretary's office, but was ignored.

Plaintiff alleges that Defendant Toks Omishaken is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant California Highway Patrol (CHP) is a State level law enforcement agency of the State of California (the equivalent of the "State Police" in other states). Pursuant to California Gov. Code § 14615, the CHP has primary

responsibility for investigating violations that occur on State property to include

misconduct committed by State agencies and/or their officers and employees.

Plaintiff was a victim of numerous violations committed by the FTB and its

associated agencies that fall under the jurisdiction of the CHP.  Plaintiff reported

this misconduct to the CHP, but in each instance Plaintiff's complaints were

ignored. To the contrary, Defendant CHP stalked and harassed Plaintiff at the

direction of Defendant Yee.

Plaintiff alleges that the Defendant California Highway Patrol is directly

liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of
Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to
Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of
Assembly

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due
Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. §
1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

182. Defendant Commissioner Amanda Ray served as Commissioner of the California Highway Patrol (CHP), a position appointed by the Governor of California and ratified by the California State Senate.  Commissioner Ray has ultimate responsibility for the acts and ommissions of the CHP.  The office of

Commissioner Ray was notified of Plaintiff's complaint for matters that fell within her jurisdiction, but the complaint was ignored.

Plaintiff alleges that the Defendant Amanda Ray is directly liable for the following causes of action by her actions and failure to supervise:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom   Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

183. Defendant Commissioner Warren Stanley is a former Commissioner of the California Highway Patrol, a position appointed by the Governor of California.  Commissioner Stanley served as Commissioner and/or Acting Commissioner of the CHP from 2017 to 2020, a period during which substantial abuse of the Plaintiff occurred and was reported to the office of Commissioner Stanley, yet was ignored. Plaintiff alleges that Defendant Warren Stanley is directly liable for the following causes of action by his own actions and his failure to supervise the CHP staff below him:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom   Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant California Government Operations Agency (GovOps) is an agency of the State of California. GovOps is the parent agency of the FTB. GovOps also has broad responsibility for providing management, auditing, oversight, and corrective action for all California state agencies. GovOps is also a parent agency with ten wholly-controlled subordinate agencies for which it is directly responsible. Two of GovOps subsidiary agencies are Defendants in this complaint: the FTB and the California Department of General Services (DGS). Defendant GovOps failed to properly supervise its subordinate agencies, despite being notified by Plaintiff. As the parent agency of the FTB, with full oversight responsibility of the FTB, Defendant GovOps is liable for all violations committed by its subsidiary agency FTB.

Plaintiff alleges that the Defendant California GovOps is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant Secretary Amy Tong serves as Secretary of the California Government Operations Agency (GovOps), a position appointed by the Governor of California. As Secretary of GovOps, Defendant Tong bears primary responsibility for the actions and omissions of GovOps to include its subsidiary agencies FTB and DGS.   The office of Defendant Tong was notified by the Plaintiff but ignored Plaintiff's complaint. As the  Secretary of the parent agency of the FTB, Defendant Tong bears full liability for the actions of the FTB and each cause of action therein. Plaintiff alleges that Defendant Amy Tong is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

133

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S.   Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic   Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom   Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant Marybel Batjer is a former Secretary of the California Government Operations Agency, a position appointed by the Governor. Defendant Batjer served in this capacity from 2013 to 2019, a period during which significant harm was inflicted on Plaintiff by agencies under Defendant Batjer's direct control. Defendant Batjer was notified of this misconduct but ignored it. As Secretary of the parent agency of the FTB, Defendant Batjer is responsible for and liable for all causes of action brought against the FTB itself. Plaintiff alleges that Defendant Marybel Batjer is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S.   Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution          ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate   Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic   Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom   Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant California State Controller is a State agency of the State of

California. The California State Controller is the chief financial officer of the State

of California and has wide responsibility for State financial matters and oversight of State agencies.  The California State Controller also serves as one member of the three-member FTB.  The California State Controller actively participted in the unlawful abuse of the Plaintiff. The name of the office and office holder of the California State Controller appeared on the fraudulent seizure oders mailed to Plaintiff's bank.  Despite this, the California State Controller's office claimed to have no knowledge of the actions it was perpetuating. When asked about this abuse, the California State Controller's office claimed that their role was only to deal with "big picture" issues.  However, no such arbitrary distinction exists in the law. Pursuant to California Government Code § 15700, the California State Controller has legal responsibility for all matters large or small related to the Franchise Tax Board.  The State Controller's Office was notified numerous times of the Plaintiff's complaint but ignored it. As one member of the three-member Franchise Tax Board, the California State Controller is fully responsible for, and bears full liability for, all actions of the FTB itself. Plaintiff alleges that the Defendant California State Controller is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

139

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate   Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic   Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom   Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant State Controller Betty Yee served as the State Controller of the State of California, an elected position.  Defendant Yee is designated a "Constitutional Officer" within the State of California, one of eight officials who comprise the eight most powerful offices in the State.  In her capacity as State Controller, Defendant Yee served as one member of the three-member California Franchise Tax Board. As such, Defendant Yee bears responsibility for the acts and negligence of the State Controller's Office and also for the FTB itself. Defendant Yee's name personally appeared on the illegal confiscation orders used to unlawfully deprive Plaintiff of his funds.  Plaintiff filed complaints with the State Controller's Office but they were ignored. As a direct member of the Franchise Tax Board, Defendant Yee bears full liability for all actions and omissions of the Franchise Tax Board directed at Plaintiff.

In 2019 Plaintiff attended a peaceful and lawful event in Sacramento. Defendant Yee, upon learning of Plaintiff's attendance, sent her personal plainclothes bodyguards of the CHP to harass and intimidate Plaintiff, despite

142

having no justification for doing so, thereby violating Plaintiff's 1st Amendment

rights. Plaintiff alleges that Defendant Yee is directly liable for the following

causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant Shawn Silva serves as Senior Staff Counsel to the California State Controller. As such, he has a duty to provide oversight and legal guidance to the State Controller's Office.  Plaintiff was directed to speak to Defendant Silva, but Defendant Silva responded dismissively to Plaintiff's complaint and refused to investigate it. Plaintiff alleges that Defendant Shawn Silva is directly liable for the following causes of action:

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

145

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Yvette Stowers previously served as the Deputy State Controller for Taxation, a position within the California State Controller's Office . In this role Defendant  Stowers frequently served as the State Controller's delegated representative on the Franchise Tax Board.

As a delegated member of the Franchise Tax Board, Defendant Stowers had all of the powers, responsibilities, and duties of a full-time member of the Franchise Tax Board. It was not a part-time or ceremonial position. It was a position of great significance, weilding tremendous power and responsibility for the lives and well-being of citizens.  Despite being a full acting member of the Franchise Tax Board, Defendant Stowers ignored Plaintiff's legitimate complaints about FTB misconduct. Defendant Stowers aided and abetted that conduct with the full power of her office as a delegated FTB board member. As such, Defendant Stowers bears full responsibility for all actions and omissions of the FTB and all Causes of Action therein. Plaintiff alleges that Defendant Yvette Stowers is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

147

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate  Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant Richard John "Rick" Chivaro previously served as Chief

Counsel to the California State Controller.  As such, his duties and negligence

were identical to those of the current Chief Counsel to the California State

Controller.  When Plaintiff made serious, substantiated complaints to Defendant

Chivaro for matters under his direct control, Defendant Chivaro refused to help.

Instead he made numerous mocking, condescending, and dismissive statements

to Plaintiff. Plaintiff alleges that Defendant Richard Chivaro is directly liable for

the following causes of action:

    Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

    Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

    Eighth Cause of Action: Violation of 14th Amendment Rights: Due
    Process

    Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. §
    1983 et seq. ("Deprivation of Rights")

    Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

    Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

    Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq.
    ("Conspiracy against Rights")

    Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation
    of rights under color of law")

    Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the
    "Racketeer Influenced and Corrupt Organizations Act")

    Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq.
    ("Conspiracy")

    Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant California Department of Finance (DoF) is a State agency of the State of California. The Department of Finance has broad responsibility for the oversight and management of State agencies to include the FTB. The Director of the DoF serves as one of three Members of the FTB. Plaintiff complained about the FTB's misconduct to the DoF, yet the DoF ignored it. As the agency that provides one member to the three-member FTB, Defendant DoF is responsible for and liable for all causes of action pertaining to the FTB through its mismanagement of the FTB. Plaintiff alleges that the Defendant California Department of Finance is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate   Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom   Banes Civil Rights Act")

153

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant Joe Stephenshaw serves as Director of the California Department of Finance, a position appointed by the Governor and confirmed by the Legislature. He was appointed in July 2022.  In this capacity, Defendant Stephenshaw serves as one member of the three-member FTB. As a sitting board member of the FTB, Defendant Stephenshaw exercises direct supervisory and operational control over all activities of the FTB. As one member of the three-member Franchise Tax Board, the deliberate actions and failures to act by Defendant Stephenshaw render him liable for all causes of action against the FTB itself. Plaintiff alleges that Defendant Stephenshaw is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

154

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant Keely Bosler previously served as the Director of the California Department of Finance from 2018 to 2022.  In this capacity, Defendant Bosler also served as one member of the three-member FTB. While serving on the FTB, Defendant Bosler was notified of Plaintiff's complaints numerous times but ignored them, and instructed others to ignore Plaintiff and block Plaintiff's communications. Defendant Bosler also falsified documents in response to requests made by the Plaintiff under the California Public Records Act, creating fresh documents from blank Microsoft Word templates instead of providing the original documents as requested, in order to conceal her activity. As a sitting member of the three-member Franchise Tax Board, Defendant Bosler's actions and failure to act render her liable for all Causes of Action brought against the FTB itself. Plaintiff alleges that Defendant Bosler is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly
Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

159

Defendant Estella Simoneau previously served as "Chief, Administrative Services" for the California Department of Finance, with the Director of the California Department of Finance serving as one member of the three-member Franchise Tax Board.  Defendant Simoneau blocked Plaintiff's legitimate complaint made to the California Department of Finance despite having no legal authority to do so. Defendant Simoneau was not employed in any capacity of internal affairs, internal investigations, or any other role which would have allowed her to investigate Plaintiff's complaint. She had a duty to forward Plaintiff's complaint to the authorized individuals in those roles for proper investigation. Instead, Defendant Simoneau acted to ensure that Plaintiff's complaint was blocked and ignored within the DoF.  Plaintiff alleges that Defendant Simoneau is directly liable for the following causes of action:

> Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition
>
> Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process
>
> Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process
>
> Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process
>
> Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")
>
> Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom   Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

 Plaintiff alleges this Defendant is indirectly liable for all other causes of action by having aided and abetted them.

Defendant Antonio Vasquez serves as a Board Member of the California State Board of Equalization, an elected position. In this capacity he previously served as one member of the three-member California Franchise Tax Board. As a sitting Board member of the FTB, Defendant Vasquez had direct operational control over the FTB.  Plaintiff made several complaints about the FTB's conduct

161

to Defendant Vasquez in his official capacity as an FTB Board Member, but Defendant Vasquez ignored them.  As one member of the three-member Franchise Tax Board, Defendant Vasquez is liable for all causes of action brought against the FTB itself due to his actions and failures to act. Plaintiff alleges that Defendant Vasquez is directly liable for the following causes of action:

> First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

> Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

> Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

> Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

> Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

> Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

> Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

> Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

> Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

> Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant Malia Cohen serves as a Board Member of the California State Board of Equalization, an elected position.  In this capacity she serves as one member of the three-member California Franchise Tax Board. As a sitting Board member of the FTB, Defendant Cohen exercises direct operational control over all actions of the FTB. Defendant Cohen has direct responsibility for all actions and omissions of the FTB.  Plaintiff made complaints about the FTB's conduct to the office of Defendant Cohen in her official capacity as an FTB Board Member, but Defendant Cohen ignored them. As one member of the three-member

Franchise Tax Board, Defendant Cohen bears full liability for all causes of action brought against the FTB itself due her actions and her failures to act. Plaintiff alleges that the Defendant Malia Cohen is directly liable for the following causes of action:

> First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

> Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

> Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

> Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

> Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

> Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

> Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

> Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

> Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

> Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

> Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom   Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant Vikram Mandla serves as Deputy Attorney General within the Office of the Attorney General of the State of California. He is a licensed attorney in the State of California with State Bar, #287101.  Defendant Mandla supervises the "TRUE Task Force," a task force operated by the FTB.  The acronym "TRUE" stands for "Tax Recovery in the Underground Economy." The legal authority of this Task Force is governed by California Government Code § 15926. As its name suggests, it is limited to pursuing tax fraud in the "underground economy." It has no jurisdiction over ordinary citizens who file complaints about the FTB. Without legal justification or jurisdiction, the TRUE Task Force under Vikram Mandla bullied and harassed Plaintiff in retaliation for filing a complaint about

the FTB. Plaintiff alleges that Defendant Vikram Mandla is directly liable

through his actions and failures to act for the following causes of action:

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

168

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Selvi Stanislaus serves as Executive Officer of the California Franchise Tax Board (FTB), a position appointed by the Governor and confirmed by the Legislature. Defendant Stanislaus is responsible for all aspects of FTB operations including management of programs, procedures, and subordinates. As Executive Officer, Defendant Stanislaus also has full authority and responsibility for compliance and oversight of the FTB to ensure that all FTB operations are conducted within the bounds of the law and professional standards. Defendant Stanislaus was the chief architect of the harms that came to Plaintiff. Defendant Stanislaus was made aware of Plaintiff's legitimate complaints about FTB abuse, but ignored them and directed others to ignore them, and continued her path of tortious activity towards Plaintiff. As the Executive Office of the FTB, Defendant Stanislaus bears full liability for all causes of action directed at the FTB itself. Plaintiff alleges that Defendant Selvi Stanislaus is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant Jozel Brunett serves as Chief Legal Counsel to the FTB.  She is also a licensed attorney and member of the California State Bar, #124188.   In that capacity, Defendant Brunett is responsible for all aspects of legal compliance of the FTB.  Defendant Brunett is responsible for establishing the policies of FTB, ensuring that the operations of the FTB are conducted according to law and also safeguarding civil rights of taxpayers.  Because Defendant Brunett is the chief legal officer of the FTB with responsibility for complaince and oversight of FTB actions, Plaintiff contacted the office of Defendant to seek resolution for his complaint, but this request was ignored, and Defendant Brunett directed others to ignore Plaintiff's complaint. Plaintiff alleges that Defendant Jozel Brunett is directly liable for the following causes of action:

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Defendant Margeurite Esquivido is an employee of the California Franchise Tax Board.  Plaintiff was directed to speak to Defendant Esquivido about his complaint.  Instead of assisting Plaintiff as she was required to do by law,  Defendant Esquivido refused to help Plaintiff and engaged in a coverup of the FTB's actual actions by participating in the preparation of false and misleading documents designed to conceal what FTB had actually done. Defendant Esquivido also directed others not to assist Plaintiff. Plaintiff alleges that Defendant Margeurite Esquivido is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

174

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Seventh Cause of Action: Violation of 8th Amendment Rights: Excessive Fines

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Ninth Cause of Action: Violation of  Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause")

Tenth Cause of Action, Violation of  Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Seventeenth Cause of Action, Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Eighteenth Cause of Action, Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Nineteenth Cause of Action, Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty First Cause of Action, Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Twenty Second Cause of Action, Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Twenty Third Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Twenty Fourth Cause of Action, Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic   Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom   Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Second Cause of Action: Violation of 5th Amendment Rights: "The Takings Clause"

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Erik Scheidegger is an employee of the Franchise Tax Board. Plaintiff was directed to speak to Defendant Scheidegger about Plaintiff's complaint.  Instead of assisting Plaintiff as he was required to, Defendant Scheidegger engaged in a coverup of the actual acts committed by the FTB. Plaintiff allges Defendant Scheidegger knowingly and deliberately engaged in the preparation of false and misleading documents, including false "demand notices," and provided false and misleading information to outside parties in order to conceal FTB wrongdoing. Plaintiff alleges that Defendant Erik Scheidegger is directly liable for the following causes of action:

Fourth Cause of Action: Violation of 4th Amendment Rights, Search and Seizure

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Seventh Cause of Action, Conversion

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Brenda Voet is an employee of the Franchise Tax Board.

Defendant Voet has been involved in public-facing roles at the FTB with the title

of Program Specialist.  Following the ten-year vacancy of the position of Taxpayer Rights Advocate (which the FTB is required by law to maintain, but failed to do so) Defendant Voet was appointed in early 2022 to fill this position. Defendant Voet was appointed to this position by Defendant Stanislaus and reports to Defendant Stanislaus. While serving as the Taxpayer Rights Advocate, Defendant Voet had a legal obligation to assist the Plaintiff with his complaint. Defendant Voet, as Taxpayer Rights Advocate, refused to assist Plaintiff with his legitimate complaint or even speak to Plaintiff, thereby depriving Plaintiff of his right to access the protections of the office of the Taxpayer Rights Advocate. Plaintiff alleges that Defendant Brenda Voet is directly liable for the following causes of action:

> Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

> Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

> Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

> Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

> Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

> Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

> Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

179

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant California Department of General Services (DGS) is a State agency of the State of  California. The DGS has broad responsibility for managing agencies of the State of California and investigating business practices, misconduct, and impropriety.  The duties of the DGS are described by California Government Code § 14615(a) which states "The Department has general powers of supervision over all matters concering the financial and business policies of the state...." The Department of General Services carries out the risk management function of the State of California, a key component of which is the auditing of

actions, processes, and procedures of State agencies and recommending or

enforcing corrective action. To assist in carrying out that auditing responsibility,

the DGS has an office within it called the Office of Audit Services (OAS).  The

OAS routinely performs audits of various government departments and agencies

of the State of California to ensure that they comply with best practices and the

law. The OAS performs  approximately two dozen audits per year of State

agencies, departments, and programs.

Plaintiff brought his concerns about FTB abuses to the attention of

Defendant DGS on several occasions. Plaintiff furnished Defendant DGS with

public reports and news articles indicating that the abuses of the FTB were not

isolated, but were part of a pattern of practice that warranted DGS supervision as

required by California Government Code § 14615(a).  Despite being notified of

the harmful and abusive practices of the FTB that clearly fell within its

jurisdiction under Gov. Code § 14615(a), the DGS took no action to take

corrective action that would have prevented further harm, or to remedy the harm

that had already been done to Plaintiff and others. Plaintiff alleges that the

Defendant California DGS is directly liable for the following causes of action:

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Ana M. Lasso serves as the Director of the Department of General Services (DGS), a State agency of the State of California. Her position was appointed by the Governor and confirmed by the State Senate.  As Director of DGS, Defendant Lasso had responsibility for carrying out the functions of the DGS, to include the responsibilities of oversight, audit, and corrective action granted to it under California Gov. Code § 14615(a).  Plaintiff brought his complaints to the office of Defendant Lasso, seeking an amicable resolution and the restoration of his funds. Each and every such attempt was ignored. Plaintiff alleges that Defendant Ana Lasso is directly liable for the following causes of action:

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Nick Wagner is an employee of the Department of General Services (DGS). Defendant Wagner is employed as a risk management specialist within the Office of Risk and Insurance within the DGS. Defendant Wagner is the first point of contact for individuals reporting misconduct to the DGS. Plaintiff attempted to report his complaint to Defendant Wagner, but was ignored. Defendant Wagner failed to take action or provide remedial action as required by California Gov. Code § 14615(a). Plaintiff alleges that Defendant Nick Wagner is directly liable for the following causes of action:

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

184

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty First Cause of Action: Violation of Article 1, Section 23 of the Florida State Constitution, "The Right to Privacy"

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Little Hoover Commission is a State agency of the State of California. Formally known as the "Milton Marks 'Little Hoover' Commission on California State Government Organization and Economy," it is an independent state oversight agency created in 1962. The Little Hoover Commission (LHC) was modeled on, and named after, the Hoover Commission established by President Truman in 1947, an independent watchdog commission at the Federal level. According to its website, the LHC's "mission is to investigate state government operations and policy, and – through reports and legislative proposals – make recommendations to the Governor and Legislature to promote economy, efficiency and improved service in state operations."  The website further states that the LHC:

> "has broad and independent authority to evaluate the structure, organization, operation and function of every department, agency and executive branch of state government... the Commission's studies look beyond whether programs comply with existing statutes and regulations. They instead explore how programs can and should function today and in the future."

The LHC regularly produces detailed reports and studies about various California state agencies, especially those involved in controversy or complaints.

Despite its mandate to do so, the LHC has never performed a single study on the FTB. This is grossly negligent because the FTB appears to generate more complaints from members of the public than all the other California state agencies combined. Numerous news articles have been written about FTB abuse, and complaints from victims of FTB abuse are abundant. The LHC had a mandate to investigate just the type of widespread abuse that the FTB is engaged in, which would have prevented serious harm to Plaintiff, but the LHC negligently failed to do so.

The Little Hoover Commission (LHC) is also the parent agency of the California State Auditor, a State agency of the State of California. Pursuant to California Gov. Code §§ 8542- 8544.5(d), the LHC is responsible for the management and oversight of the California State Auditor. Plaintiff reported his complaints about the FTB directly to both the LHC and the California State Auditor. On information and belief, Plaintiff believes that numerous other citizens have also filed complaints about FTB abuse with the California State Auditor. Despite this, neither the LHC nor the California State Auditor took any action related to FTB abuse. Both the LHC and the California State Auditor have produced dozens of reports on numerous and diverse California state agencies. Yet neither the LHC nor the California State Auditor have ever audited the FTB, or reported on FTB operations, despite voluminous complaints from the public.

Had they done so, great harm to Plaintiff and others could have been prevented.

Plaintiff alleges that Defendant Little Hoover Commission is directly liable for

the following causes of action:

      Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

      Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

      Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq.
      ("Conspiracy against Rights")

      Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the
      "Racketeer Influenced and Corrupt Organizations Act")

      Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq.
      ("Conspiracy")

      Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

      Twenty Eighth Cause of Action, Fraud

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by

having aided and abetted them.

      Defendant California State Auditor (CSA) is a State agency of the State of

California. The CSA is a subsidiary agency of the Little Hoover Commission. The

CSA is responsible for auditing California state agencies and departments to

ensure that they comply with best financial management practices and the law.

The CSA uses routine, scheduled audits and also opportunistic, broad-scope

audits. The latter type of audit is referred to as a "Performance/Policy

Evaluation."  This type of audit goes beyond a financial audit and probes practices, policies, and procedures to create a holistic picture of an agency's performance and conduct. It is administered when questions or complaints about an agency exist. According to the CSA's website:

> "Performance/policy evaluations involve systematically comparing what should be happening to what is happening. They are objective, independent, nonpartisan, and based on evidence. We ultimately determine whether government agencies are efficient, effective, fulfilling their missions, and complying with the law."

Defendant California State Auditor (CSA) recognizes that its oversight role extends far beyond mere financial audits, and involves examining the management style, culture, and reputation of State organizations. On its webpage the CSA describes its mission for its role as the California state watchdog, a vision of protecting the higher public good.  The CSA states:

> "As part of performance/policy evaluations—also known as performance audits—we collect evidence and find the truth. We use that truth to craft recommendations so that those in power can best serve the people they represent... We ultimately determine whether government agencies  are efficient, effective, fulfilling their missions, and complying with the law."

This is precisely the type of audit and review that should have been conducted on the notoriously abusive FTB, but the CSA negligently failed to do so.  Had the CSA conducted a review of this notorious state agency, many citizens would

have been saved from abuse.  Plaintiff believes that this failure to audit the

notoriously abusive FTB is deliberate.

The California State Auditor (CSA) also investigates whistleblower

complaints. The CSA has set up a hotline to receive complaints about California

state agencies for investigation.  Plaintiff filed a complaint on the whistleblower

hotline, but it was ignored. Defendant CSA is also required by law to maintain

an audit program of State agencies at high risk of abuse. Cal. Code Regs. Tit. 2, §

61000 requires the CSA to maintain a "State High-Risk Government Agency

Audit Program" to:

> "improve the operation of state government by identifying, auditing, and
> recommending improvements to state government agencies and statewide
> issues at high risk for waste, fraud, abuse, or mismanagement or for
> having major challenges associated with their economy, efficiency, or
> effectiveness."

Despite this mandate, the CSA has has never audited the FTB and has

deliberately ignored FTB abuse. Plaintiff alleges that the Defendant California

State Auditor is directly liable for the following causes of action:

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq.
("Conspiracy against Rights")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Defendant Office of Tax Appeals (OTA) is a State agency of the State of California. The OTA was created in 2017 by Assembly Bill 102, known as the "Taxpayer Transparency and Fairness Act of 2017," in response to widespread complaints from members of the public about abuse and corruption within the FTB.  This relatively new State agency has failed badly in its intended role.  The OTA is staffed by FTB loyalists and marked by severe deprivation of Constitutional rights.  It is a a one-sided "kangaroo court" in which 98% of cases are decided in favor of the Franchise Tax Board. The OTA deprives citizens of substantial civil rights protections and due process guaranteed by the 4th, 5th, and 14th Amendments of the Constitution. This Complaint challenges the Constitutionality of this relatively new State agency in detail below.

Plaintiff alleges that the Defendant Office of Tax Appeals is directly liable for the following causes of action:

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

191

Eighth Cause of Action: Violation of 14th Amendment Rights: Due
Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. §
1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq.
("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation
of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the
"Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq.
("Conspiracy")

Twenty Eighth Cause of Action, Fraud

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by

having aided and abetted them.

Defendant Anne Marie Schubert serves as the Sacramento County District

Attorney, an elected position in Sacramento County, California. Pursuant to

Article IX, Section 42 of the Sacramento County Charter, Defendant Schubert is

responsible for prosecuting all cases of violations occurring within the County of

192

Sacramento. Defendant Schubert is authorized to pursue both civil and criminal remedies. To carry out her duties, Defendant Schubert is provided a vast array of resources at taxpayer expense. These include a large full-time staff of paid investigators who are sworn California peace officers, with jurisdiction to investigate any misconduct occurring within the County. Defendant Schubert is also provided with a large paid staff of full-time researchers, analysts, and Assistant District Attorneys to allow her to fully investigate and prosecute any allegation of crime occurring within the County, or refer it to another agency for investigation or prosecution. Defendant Schubert is also provided with extensive contacts, liasions, and shared databases with other law enforcement and civil enforcement agencies at the State, Federal, and local level for instances when coordination and cooperation is necessary.  Plaintiff correctly reported his FTB complaint to Defendant Schubert as several aspects of the violations occurred within her jurisdiction, but Plaintiff's complaint was ignored. Plaintiff alleges that Defendant Anne Marie Schubert is directly liable for the following causes of action:

> Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process
>
> Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process
>
> Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Federal Bureau of Investigation (FBI) is a Federal law

enforcement agency headquartered in Washington DC.  Pursuant to U.S.C. 28 §

533 the FBI is mandated to investigate violations of Federal law as well as

violations that cross State lines. The FBI has a particular focus on investigating

public corruption. The FBI also claims to place a great emphasis on investigating civil rights abuses, which are often a violation of Federal law. The FBI's "Mission Statement" states that it seeks to both "Protect civil rights" and "Combat public corruption at all levels."

Many of the violations committed against Plaintiff by the FTB and the other Defendants fall within the jurisdiction of the FBI.  These include Federal civil rights abuses, violations of the Hobbs Act, mail fraud, corruption in public office, conspiracy to violate civil rights, and many other applicable Federal statutes.  Many of the violations committed by the FTB crossed State lines, making such conduct fall within the interstate jurisdiction of the FBI..

Plaintiff reported his initial complaints to the FBI. Later, when Plaintiff discovered that CBS News had written a series of news articles about FTB abuse, Plaintiff also shared this information with the FBI to demonstrate that his complaint was not an isolated incident, and the same illegal FTB conduct was affecting many other people.

Despite having a clear legal mandate to investigate the violations suffered by the Plaintiff, and having a clear public interest in doing so given the large number of other citizens that were affected by FTB misconduct, the FBI failed to investigate Plaintiff's complaints.

195

To the contrary, instead of investigating wrongdoing at the FTB, the FBI, acting as part of the FTB's "TRUE Task Force," harassed Plaintiff about his complaints in an attempt to silence Plaintiff.

Plaintiff alleges that Defendant FBI is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Third Cause of Action: Violation of 1st Amendment Rights: Freedom of Assembly

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Department of Homeland Security (DHS) is a Federal law enforcement agency headquartered in Washington DC. DHS was created by the Homeland Security Act in 2002.   DHS sits on the "TRUE Task Force" maintained by the Franchise Tax Board.  DHS officer Nicole Solander who sits on the "TRUE Task Force" harassed and attempted to intimidate Plaintiff into silence for filing a complaint about the FTB.  DHS was negligent in supervising their employees and when Plaintiff attempted to file a complaint with DHS, it was ignored.

Plaintiff alleges that Defendant Department of Homeland Security is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

198

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant U.S. Department of Justice (DOJ) is the apex Federal law enforcement agency of the United States, headquartered in Washington DC.  The DOJ is responsible for enforcing violations of Federal law to include civil rights violations. The DOJ is responsible for investigating crimes related to public corruption and abuse of power by public officials under color of law. In 1976, the Public Integrity Section was established within the DOJ Criminal Division with general supervisory jurisdiction over public corruption offenses.

The Civil Rights Division of the Department of Justice was created in 1957 by the enactment of the Civil Rights Act of 1957.  According to its website, this division "works to uphold the civil and constitutional rights of all persons in the United States, particularly some of the most vulnerable members of our society."

These rights include protections against unreasonable searches and seizures, violations of due process, and abuses that occur under color of law.

A representative of the DOJ sits on the "TRUE Task Force" maintained by the FTB. In this role, the DOJ has not protected civil rights, but has engaged in serious abuses of them. The DOJ has failed to properly supervise its employees and has aided and abetted in serious civil rights violations by the "TRUE Task Force." Plaintiff alleges that Defendant U.S. Department of Justice is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

200

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Twenty Ninth Cause of Action: Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Philip A. Talbert is the U.S. Attorney for the United States Attorney's Office, Eastern District of California, located in the Sacramento region. As the U.S. Attorney for this region, Defendant Talbert is responsible for the DOJ employees on the "TRUE Task Force." These employees are employed by the DOJ, the FBI, DHS, and other Federal agencies. All of them fall under Defendant Talbert's control. Defendant Talbert is responsible for supervising them,

monitoring their activities, and ensuring that DOJ employees do not engage in civil rights abuses. Defendant Talbert was notified that his agents were far exceeding the scope of authority granted to them pursuant to the establishment of the "TRUE Task Force" under California Government Code § 15926. Defendant Talbert was notified that his agents were behaving in a rogue and unprofessional manner, but ignored these complaints. Plaintiff alleges that Defendant Philip Talbert is directly liable for the following causes of action:

First Cause of Action: Violation of 1st Amendment Rights: Freedom of Speech

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Twelfth Cause of Action, 42 U.S.C. § 1983 et seq. ("Monell Violation")

Thirteenth Cause of Action, 42 U.S.C. § 1983 et seq. ("Canton Liability")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

202

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Thirty Third Cause of Action: Abuse of Process

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Timothy Johnstone is an employee of the U.S. Attorney for the United States Attorney's Office, Eastern District of California, located in the Sacramento region.  Defendant Johnstone interfered with Plaintiff's attempt to file a complaint about the "TRUE Task Force." Defendant Johnstone behaved in a bullying, harassing, and demeaning fashion towards Plaintiff, and failed to register Plaintiff's complaint.

 Plaintiff alleges that Defendant Timothy Johnstone is directly liable for the following causes of action:

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

204

Defendant Victor "Vic" Keesey is a current or former employee of the Kern County Sherrif's Office detailed to the FBI. On the orders and in cooperation with other Defendants, Defendant Keesey did harass Plaintiff at a residence Defendants believed was Plaintiff's home in an attempt to silence Plaintiff and prevent him from exercising his Constitutional rights. Plaintiff alleges that Defendant Keesey is directly liable for the following causes of action:

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

Defendant Nicole Solander is an employee of the Department of Homeland Security (DHS) and a member of the "TRUE Task Force" of the Franchse Tax Board. Plaintiff alleges that Defendant Nicole Solander harassed and attempted to intimidate Plaintiff to deter him from exercising his Constitutional rights, and is directly liable for the following causes of action:

Second Cause of Action: Violation of 1st Amendment Rights: Freedom to Petition

Fifth Cause of Action: Violation of 5th Amendment Rights, Due Process

Sixth Cause of Action: Violation of 6th Amendment Rights,  Due Process

Eighth Cause of Action: Violation of 14th Amendment Rights: Due Process

Eleventh Cause of Action, Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")

Fourteenth Cause of Action, Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Fifteenth Cause of Action, Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Sixteenth Cause of Action, Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and Corrupt Organizations Act")

Twentieth Cause of Action, Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Twenty Fifth Cause of Action: Intentional Infliction of Emotional Distress

Twenty Sixth Cause of Action, Negligent Infliction of Emotional Distress

Twenty Eighth Cause of Action, Fraud

Thirtieth Cause of Action, Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Plaintiff alleges this Defendant is indirectly liable for all other Causes of action by having aided and abetted them.

## Consitutional Challenge

## to California Constitution Article XIII Section 32

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff challenges the Constitutionality of Article XIII, Section 32 of the California State Constitution.

California State Constitution Article XIII Section 32 states:

"No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

207

California State Constitution Article XIII Section 32 is repugnant to the U.S. Constitution. It deprives citizens of due process. It requires the up-front "payment of a tax claimed to be illegal" before any legal action may be undertaken to recover the tax.

The Article places punishment before trial and it presumes guilt before the presumption of innocence. Under the Article a citizen must pay in full any amount of tax demanded- however arbitrary, outlandish, or ridiculous that figure is- before initiating a legal challenge to recover their own money.

The FTB has a demonstrated track record of demanding arbitrary, unrealistic, and ridiculous tax payments that have no basis in law. This has happened to Plaintiff and has been documented in public reporting of other cases. The Article deprives citizens of the right to due process as guaranteed by the 4th, 5th, and 14th Amendments of the U.S. Constitution.

The Article deprives citizens of the right to trial guaranteed by the 6th Amendment of the U.S. Constitution. It makes them pay up front before exercising the right to go to trial, and if they don't have the money to pay, they will not be allowed to go to trial.

The Article deprives citizens of their right to freedom of speech, petition, and redress as guaranteed by the First Amendment of the U.S. Constitution. It

208

requires payment up front before those rights can be exercised, and if the citizens lack funds to pay up front, the rights cannot be exercised at all.

The Article violates 8th Amendment prohibitions against excessive bail and excessive fines. It requires that any amount of fine requested by the State of California must be paid up front, however outlandish the figure is, before any proceeding to determine validity.

It is difficult to imagine another law as devastating to Constitutional rights as this Article.  It is akin to requiring a defendant to serve a prison sentence before going to trial.

The California Franchise Tax Board uses the Article as a license to steal. The Article allows them to confiscate an unlimited amount of money.  All that is needed is for the FTB to claim that a taxpayer owes a random amount pulled out of thin air- a thousand dollars or a million dollars. That amount then becomes legally binding, based on nothing more than the fact that the California Franchise Tax Board said it is.  The Article requires it to be paid before it can be disputed.

The taxpayer must pay the entire amount up front, if she wishes to go to court and dispute the amount. Regardless of whether the taxpayer goes to trial or not, the amount remains legally binding. The voracious California Franchise Tax Board will move to seize it by force through bank levies, wage garnishments, foreclosing on homes, and liquidating 401k and retirement accounts.

209

The Article constitutes a "Bill of Attainder" in violation of Article 1, Section 10 of the U.S. Constitution. A "Bill of Attainder" establishes guilt by executive decree, without the benefit of trial, and is expressly forbidden by the Constitution.

**Constitutional Challenge to**

**The "Office of Tax Appeals"**

Plaintiff realleges and incorporates all relevant informaion in this Complaint. Plaintiff challenges the Constitutionality of the Office of Tax Appeals (hereinafter "OTA"), an agency of the State of California.

The OTA was created in 2017 by Assembly Bill 102, known as the "Taxpayer Transparency and Fairness Act of 2017," in response to widespread complaints from members of the public of abuse by the California Franchise Tax Board. Assembly Bill 102 sought to create a separate agency to address the systematic abuses of the Franchise Tax Board and provide an independent forum for dispute resolution.

The OTA is a  relatively new State agency but already has failed badly at its intended purpose.  It is deeply Constitutionally flawed. Instead of curtailing abuses of the California Franchise Tax Board as it was designed to do, it has

made those abuses much worse- with the added detraction of violating

Constitutional protections that taxpayers enjoy.

The OTA functions as an informal "kanagroo court" outside the legal

system where citizens can bring their complaints about the Franchise Tax Board.

These complaints are decided by an "Administrative Law Judge" in a court-like

setting that is not a real court.

The "Administrative Law Judges" of the OTA are not real judges. They are

not members of the Judicial branch of the State government, but the Executive

branch. They are hired by a panel comprised of the very California state tax

agencies that are respondents in the complaints being brought before the OTA to

adjudicate.

The senior management of the OTA are all political appointees of the

Governor, just as the heads of the California tax agencies they allegedly

adjudicate disputes for are all political appointees of the Governor.  Because of

this, they have an inherent conflict of interest. Each "Administrative Law Judge"

of the OTA  has substantial ties to the California Franchse Tax Board. They are

not independent.

Over 98% of cases brought before the OTA are decided in favor of the

Franchse Tax Board.  In the first half of calendar year 2022, there were 216 cases

brought before the OTA.  Of these 216 cases, only 4 were decided in favor of the taxpayer- less than 2%.

The range of cases that are brought before the OTA comprise the full gamut of tax-related cases that citizens and businesses may encounter. Despite this, across the full range and diversity of tax complaints of the general public, less than 2% are decided in favor of the taxpayer.

Any forum in which 98% of cases are decided in favor of one party is, prima facie, not an independent forum. This is espcially the case when that one party controls the selection of the "Administative Law Judges," senior staff, and other factors of the process.

The OTA employs 26 "Administrative Law Judges."  Each case brought before thre OTA is decided by one "Administrative Law Judge" and signed off on by two other "Administrative Law Judges" acting in a review capacity. Amazingly, not one of these cases has ever featured a "Dissent" from either of the reviewing judges.  Even by random chance, a dissent should have occurred in one of the hundreds of cases- but none did.

In many cases, the opinion was not even drafted by the "Administrative Law Judge," but by an assistant or intern. After being prepared by the intern, the memorandum was signed off by the "Administrative Law Judge."

212

The OTA may add its own additional harm on top of that.  The OTA often imposes a $5,000 penalty upon the taxpayer for "filing a frivolous appeal." This $5,000 penalty is completely arbitrary, with no legal standards for what constitututes a "frivolous appeal."  Not only is the taxpayer robbed of her chance of obtaining a legitimate hearing of FTB abuse- she may be robbed of an additional $5,000 by the OTA as it seeks to extract its pound of flesh as well.

The OTA deters citizens from filing tax protests by posting the entire contents of the case on its website, in violation of taxpayer privacy laws. These cases contain very personal information related to salary, employment or unemployement, living arrangements, family situations, health issues, mental health, personal hardships, and other intimate information. The OTA knows that by subjecting taxpayers to the public humiliation of having the most private details of their personal and financial lives posted online for all the world to see, in violation of numerous privacy laws, the OTA can deter people from seeking justice.

When posting taxpayer case summaries online, the OTA is also in violation of medical privacy under Public Law 104-191 of 1996,  the "Health Insurance Portability Accountability Act," or HIPAA. Because medical emergencies are the leading cause of financial distress in America, many taxpayer complaints involve medical issues and contain medical history.

The State of California has been determined to be a "Hybrid Entity" under 45 CFR §§ 164.103 and 164.105(a) and (c), with a responsibility to maintain medical privacy under HIPAA.  Depsite this, the OTA routinely posts the sensitive medical information of taxpayers in its online case summaries. This includes information such as illnesses, diseases, injuries, psychiatric issues, medications and drugs taken, the names of doctors seen, family medical histories, and other sensitive and personal medical information clearly covered by HIPAA privacy provisions.

The medical information posted online could easily be redacted. However the OTA chooses not to do this because the goal of the OTA is to humiliate and embarrass taxpayers as much as possible, thereby dissuading other taxpayers from pursuing their rights to dispute Franchise Tax Board abuse.

Selvi Stanislaus, the Executive Officer of the Franchise Tax Board, sits on the "Advisory Committee" of the OTA.  The OTA, which purports to be an independent dispute resolution agency, is actually a de facto subsidiary of the Franchise Tax Board itself.

In summary, the OTA deprives citizens of substantial civil rights and does not meet the standards of Constitutional protections.  It eliminates due process and other protections guaranteed by the 4th, 5th, 8th, and 14th Amendments of the United States Constitution.

## Constitutional Challenge to FTB Sovereign Immunity

Plaintiff realleges and incorporates all relevant information in this Complaint.  Where Defendants (both individuals and California state agencies) are named in this Complaint in their public capacity, Plaintiff challenges any sovereign immunity that may derive from the 11th Amendment of the U.S. Constitution.

Plaintiff also challenges any sovereign immunity enjoyed by the California Franchise Tax Board in its entirety.

The California Franchise Tax Board has established a network of physical offices in States outside the State of California. These offices are not staffed by temporary California employees, but by locals in the state where they are established.

The California Franchise Tax Board conducts activities across the United States. These activities are routine and ongoing, and target citizens from States other than California.

The California Franchise Tax Board is behaving as a de facto Federal agency.  It cannot systematically operate outside the boundaries of the State of California, in states other than California, establishing offices there, targeting citizens of other states, while hiding behind the fig leaf of 11th Amendment immunity conferred to the State of California.

215

When Plaintiff was subject to illegal cross-border seizures by the California Franchise Tax Board in 2015 and in 2018, Plaintiff contacted the State of California to file a complaint. Plaintiff was directed by California state officials to file complaints with authorities in the state in which the seizure took place.  The State of California referred citizens to the law enforcement agencies of different states in regard to its own actions, thus constituting a waiver of sovereign immunity by the State of California.  The State of California cannot be protected by 11th Amendment immunity, when it commits acts subject to the law enforcement jurisdiction of other States. This is especially the case when the State of California itself refers citizens to the authority and jurisdiction of those other States for resolution of the misconduct, thereby surrendering its sovereignty.

### California Waived Sovereign Immunity for Plaintiff

The State of California has also voluntarily waived any protections that may have been granted by the 11th Amendment in dispute with Plaintiff as follows:

Officers of the State of California, acting in an official capacity,  advised Plaintiff to proceed with a lawsuit against the State of California.  This constitutes a waiver of 11th Amendment privilege- a consent to be sued, and a waiver of all protections in that regard.

On multiple occasions Defendant Richard Chivaro, Chief Legal Counsel for the California State Controller's Office, waived legal immunity to Plaintiff in writing. Mr. Chivaro, acting in an official capacity, encouraged Plaintiff to sue the State of California, thus waiving immunity for the State.

In an email to Plaintiff dated 5/6/2020, Mr. Chivaro stated:

"Your reiterated request is acknowledged and rejected for the reasons already provided. **To the extent you continue to disagree, you may file an action in the superior court** (emphasis added)."

Clearly Mr. Chivaro, acting in his official capacity as a senior legal advisor to the State of California, waived immunity on behalf of the State and consented to let the State be sued by Plaintiff.

In an email to Plaintiff dated 6/16/21, Richard Chivaro, Chief Legal Counsel for the California State Controller's Office, stated in part:

"...essentially, **the DGS (California Department of General Services) is saying you have the green light to proceed to court** (emphasis added)."

This "green light to proceed to court" constitutes a consent to be sued.

Mr. Chivaro knew that he was waiving sovereign immunity for a Federal lawsuit involving Federal Question issues. In an email from Plaintiff to Mr. Chivaro dated 6/16/21 (to which Mr. Chivaro's email in the paragraph above was in response, Plaintiff stated:

"As the majority of the issues involved are Federal Question issues and the SCO/FTB have been operating across State lines as if they were a Federal agency, this claim is believed to not fall under the sole jurisdiction of the DGS, although they could certainly resolve it if they wish."

This is the email to which Mr. Chivaro consented that the State of California could be sued- a clear notice from Plaintiff of the Federal question issues raised in this Complaint. It clearly informed the State of California of Plaintiff's intent to sue in Federal court, to which Mr. Chivaro, acting on behalf of the State of California, consented.

Mr. Chivaro also communicated from his private email account to Plaintiff, concering Plaintiff's dispute with the FTB.  This indicates that Mr. Chivaro, a senior legal counsel for the State of California, the State Controller's Office, and hence the Franchise Tax Board, viewed the matter as a private legal matter- not offical State business qualifying for sovereign immunity.

In their Motion to Dismiss, Defendants admit the State of California has waived sovereign immunity. They acknowledge that their employees told Plaintiff that they consented to him "filing an action in superior court." Defendants claim that this waiver is not applicable because it specifies the court Plaintiff can sue in. However, this is not the case. A waiver of sovereign immunity has nothing to do with the forum chosen, and the party who waives sovereign immunity cannot then specify the specific court they waive it in.

218

Defendants know that Defendant Gavin Newsom appoints all Superior Court judges in the State of California so any case against them in that Court would be rigged, and they would face no real risk if Plaintiff pursued a case in a court with judges installed by the Defendants themselves.

Defendant Gavin Newsom appoints all judges in the State of California at all levels including Superior Court and Appellate Court. Even California Supreme Court judges are hand-picked by Defendant Newsom himself. Defedants know they face no real risk in any court in the State of California as every judge in the State of California was hand-picked and installed by Defendant Gavin Newsom and is in their pocket.

The State of California has waived sovereign immunity in the specific case of Plaintiff, as demonstrated by the emails of Richard Chivaro and other facts. As a separate matter, the California Franchise Tax Board has also lost its sovereign immunity "in toto," due to its cross-border activites and physical locations.

Defendants have also waived sovereign immunity pursuant to Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613 (2002) which held that a State agency waives any claim to sovereign immunity under the 11th Amendment when it invokes Federal jurisdiction. Defendants invoked Federal jurisdiction on multiple occasions when they employed both the FBI and the

219

Department of Homeland Security to harass Plaintiff. When Defendants tasked Victor Keesey of the FBI and Nicole Solander of the Department of Homeland Security, who sits on the TRUE task force operated by the Franchise Tax Board, they invoked Federal jurisdiction. They sought to use Federal law against Plaintiff, they sought to use Federal jurisdiction against Plaintiff, and they presumably would have been amendable to testifying in Federal court against Plaintiff. They can not claim that they are adverse to Federal court when they did in fact invoke Federal jurisdiction themselves.

The California State Constitution itself waives sovereign immunity for Defendants. Article 3, Section 5 of the California State Constitution states: "Suits may be brought against the State in such manner and in such courts as shall be directed by law."

## First Cause of Action:

## Violation of 1st Amendment Rights: Freedom of Speech

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that his right to freedom of speech as guaranteed by the 1st Amendment of the United States Constitution was violated by Defendants, acting individually and collectively.

## Second Cause of Action:

## Violation of 1st Amendment Rights: Freedom to Petition

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that his right to petition his government for redress of grievances as guaranteed by the 1st Amendment of the United States Constitution was violated by Defendants, acting individually and collectively.

### Third Cause of Action:

### Violation of 1st Amendment Rights: Freedom of Assembly

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that his freedom of assembly as guaranteed by the 1st Amendment of the United States Constitution was violated by Defendants, acting individually and collectively.

### Fourth Cause of Action:

### Violation of 4th Amendment Rights: Search and Seizure

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that his protections against unreasonable search and seizure as guaranteed by the 4th Amendment of the United States Constitution was violated by Defendants, acting individually and collectively.

### Fifth Cause of Action:

### Violation of 5th Amendment Rights: Due Process

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that his right to due process as guaranteed by the 5th

Amendment of the United States Constitution was violated by Defendants, acting individually and collectively.

## Sixth Cause of Action:

## Violation of 6th Amendment Rights: Due Process

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that his right to a trial and due process as guaranteed by the 6th Amendment of the U.S. Constitution has been violated by Defendants acting indivdually and collectively.

## Seventh Cause of Action:

## Violation of 8th Amendment Rights: Excessive Fines

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that his right to be free from excessive fines as guaranteed by the 8th Amendment of the United States Constitution was violated by Defendants, acting individually and collectively.

## Eighth Cause of Action:

## Violation of 14th Amendment Rights: Due Process

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that his right to due process as guaranteed by the 14th Amendment of the United States Constitution was violated by Defendants, acting individually and collectively.

222

**Ninth Cause of Action:**

**Violation of Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause"**

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that the State of California including named Defendants usurped and infringed on Federal powers over interstate commerce, and Plaintiff's right to freely conduct interstate commerce was restrained, in violation of Article 1, Section 8, Clause 3 of the U.S. Constitution (the "Commerce Clause").

**Tenth Cause of Action:**

**Violation of Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder")**

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants imposed a Bill of Attainder on Plaintiff and others similarly situated by naming parties as guilty by executive degree without the benefit of trial, in violation of Article 1, Section 10 of the U.S. Constitution ("Bill of Attainder").

**Eleventh Cause of Action:**

**Violation of Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq. ("Deprivation of Rights")**

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants deprived him of his "rights, privileges, and immunities secured by the Constitution and laws" as described in the Civil Rights Act of 1871; 42 U.S.C. § 1983 et seq.

## Twelfth Cause of Action:

## 42 U.S.C. § 1983 et seq. ("Monell Violation")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants in their official capacity acted with deliberate indifference to the rights of Plaintiff and others so similarly situated, and that Defendants tolerated, permitted, failed to correct, promoted, or ratified a number of official customs, patterns, or practices that violated the rights of Plaintiff protected by the the 4th and 14th Amendments of the Constitution.

## Thirteenth Cause of Action:

## 42 U.S.C. § 1983 et seq. ("Canton Liability")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants acting in their official capacity were deliberately indifferent to the Constitutional rights of Plaintiff.  Plaintiff alleges Defendants were improperly trained in in how to carry out their duties without violating Constitutional rights, despite having ample opportunity and resources

to be so trained, and having received many complaints from the public about same. This failure to be properly trained, despite posessing ample opportunity, resources, and notification, reflected a conscious choice amounting to a de facto policy of the agencies employing Defendants.

### Fourteenth Cause of Action

### Violation of 18 U.S.C. § 241 et seq. ("Conspiracy against Rights")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants acting indivdually and collectively worked together and coordinated their efforts to deprive Plaintiff of "the free exercise of any right or privilege secured to him by the Consitution or laws of the United States," coordinating their efforts in the TRUE Task Force and by other meetings and communcations, and engaged in a "Conspiracy against Rights" that denied Plaintiff his Constitutional rights under the 1st, 5th, 4th, and 14th Amendments of the U.S. Constitution.

### Fifteenth Cause of Action

### Violation of 18 U.S.C. § 242 et seq. ("Deprivation of rights under color of law")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants subjected Plaintiff to "deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States" and that such deprivation was done "under color of

any law, statute, ordinance, regulation, or custom, " Defendants individually

and collectively violated Plaintiff's rights under color of law in violation of 18

U.S.C. § 242 et seq.

## Sixteenth Cause of Action

## Violation of 18 U.S.C. Chapter 96 et seq. (the "Racketeer Influenced and

## Corrupt Organizations Act")

Plaintiff realleges and incorporates all relevant information in this

Complaint. Plaintiff alleges the California Franchise Tax Board and other named

Defendants have acted in concert as a "Racketeering Enterprise" engaged in

"Prohibited Activty" and in a pattern of "Racketeering Activity" with open-ended

continuity as defined by 18 U.S.C. Chapter 96 et seq. Defendants engaged in the

racketeering ("RICO Predicate") acts of fraud, extortion, wire fraud, mail fraud,

and collection of unlawful debt, and did so for economic gain, in violation of 18

U.S.C. Chapter 96 et seq. Defendants individually and collectively harmed

Plaintiff and others similarly situated.

## Seventeenth Cause of Action

## Violation of 18 U.S.C. § 1343 et seq. ("Fraud by wire, radio, or television")

Plaintiff realleges and incorporates all relevant information in this

Complaint. Plaintiff alleges that Defendants devised and engaged in a "scheme

or artifice to defraud, or for obtaining money or property by means of false or

226

fraudulent pretenses." Defendants utilized domestic and interstate communications in furtherance of this scheme, to some or all of the following: landline telephones, cellular telephones, fax machines, email, text messages, and other forms of electronic communications. In doing so Defendants violated 18 U.S.C. § 1343 et seq. causing harm to Plaintiff.

## Eighteenth Cause of Action

## Violation of 18 U.S.C. § 1341 et seq. ("Mail Fraud")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants engaged in a "scheme or artifice to defraud" with the purpose of "obtaining money or property by means of false or fraudulent pretenses." Defendants made use of mail carried and delivered by the United States Postal Service as well as mail delivered by "private carriers" such as UPS and FedEx. By using the U.S. Mails and other common carriers in their scheme to defraud, Defendants violated 18 U.S.C. § 1341 et. seq., causing harm to Plaintiff.

## Nineteenth Cause of Action

## Violation of 18 U.S.C. § 1344 et. seq. ("Bank Fraud")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that when Defendants removed money from his bank

227

accounts, Defendants created and caused false notices, fraudulent demand notices, or other fraudulent communications to be presented to banks in furtherance of their scheme to defraud Plaintiff and others similarly situated.

Defendants sought "to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." In doing so, Defendants committed bank fraud within the meaning of 18 U.S.C. § 1344 et. seq., harming Plaintiff and others similarly situated.

## Twentieth Cause of Action

### Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants engaged in a conspiracy employing "deceit, dishonesty, and trickery" to obstruct a lawful function of government. Specifically, Defendants conspired to provide false responses to Federal agencies and lawmakers to whom Plaintiff had reported their misconduct. Defendants did this for the purpose of obstructing justice and interfering with a lawful and appropriate function of government, i.e. the oversight and management of the California Franchise Tax Board and its related agencies. In doing so Defendants

228

violated 18 U.S.C. § 371 et. seq., causing substantial harm to Plaintiff and others similarly situated.

## Twenty First Cause of Action

## Violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants engaged in a "scheme or artifice to defraud" and transported, transmitted, or transferred across State lines "goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud" in violation of 18 U.S.C. § 2314 et. seq. ("Interstate Transportation of Stolen Goods"), to include moneys, securities or other items unlawfully taken from Plaintiff and others similarly situated.

## Twenty Second Cause of Action

## Violation of 18 U.S.C. § 2315 et. seq. ("Sale or Receipt of Stolen Goods, Securities, Moneys")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants knowingly possessed, concealed, or disposed of securities or money belonging to Plaintiff and others similarly situated "which have crossed a State or United States boundary after being

stolen, unlawfully converted, or taken" in violation of  18 U.S.C. § 2315 et. seq.

("Sale or Receipt of Stolen Goods, Securities, Moneys").

## Twenty Third Cause of Action

## Violation of 18 U.S.C. § 371 et. seq. ("Conspiracy to Violate the Mail Fraud or Wire Fraud Statutes")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants acting jointly and in concert conspired to violate mail and wire fraud statutes while conducting unlawful interstate seizures of assets from Plaintiff and others similarly situated in violation of Violation of 18 U.S.C. § 371 et. seq.

## Twenty Fourth Cause of Action

## Violation of 18 U.S.C. § 1951 et. seq. (the "Hobbs Act")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges Defendants unlawfully took Plaintiff's property against his will, employing robbery and extortion under color of law, in violation of the Hobbs Act, thereby causing Plaintiff substantial harm.

## Twenty Fifth Cause of Action

## Intentional Infliction of Emotional Distress

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges Defendants subjected him to intentional infliction of

emotional distress, with Court having supplemental jurisdiction over Plaintiffs'
state law claims pursuant to 28 U.S.C. § 1367.

## Twenty Sixth Cause of Action

## Negligent Infliction of Emotional Distress

Plaintiff realleges and incorporates all relevant information in this
Complaint. Plaintiff alleges Defendants behaved negligently, thereby subjecting
Plaintiff to emotional distress, with Court having supplemental jurisdiction over
Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## Twenty Seventh Cause of Action

## Conversion

Plaintiff realleges and incorporates all relevant information in this
Complaint. Plaintiff alleges Defendants individually and collectively acted to
convert Plaintiff's property to their own use and/or for the use of their associates
or other parties, with this Court having supplemental jurisdiction over Plaintiffs'
state law claims pursuant to 28 U.S.C. § 1367.

## Twenty Eighth Cause of Action

## Fraud

Plaintiff realleges and incorporates all relevant information in this
Complaint.

Plaintiff alleges that Defendants, acting with deliberate intent and malice toward Plaintiff, knowingly made false representations to Plaintiff on multiple occasions via email and telphonically, with such evidence to be produced at trial, regarding Plaintiff's rights pursuant to the Taxpayer Rights Act, the Taxpayer Advocate, Internal Affairs, various agency complaint procedures, the California Public Records Act, the amounts owed by Plaintiff, and other legislation, policies, and procedures designed to protect Plaintiff. Plaintiff relied on and believed these these false representations and was thereby denied the exercise of the protections due him with regard to the legislation, rights, and privileges designed to protect him.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## Twenty Ninth Cause of Action

## Violation of 18 U.S. Code § 2331(5) "Domestic Terrorism"

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants acting individually and in concert did commit acts dangerous to human life that are a violation of the laws of the United States, and or the laws of the State of California, and or the laws of the State of Florida, with such acts appearing to be intended to intimidate or coerce a civilian population, and said acts occurring primarily within the territorial jurisdiction of the United States.

## Thirtieth Cause of Action

## Violation of California Civil Code § 52.1 ("The Tom Banes Civil Rights Act")

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges Defendants individually and collectively attempted to interfere, and did interfere, with Plaintiff's exercise or enjoyment of rights protected under the laws and Constitution of the United States and the laws and Constitution of the State of California,  employing threats, intimidation, and coercion, and also employing attempted threats, intimidation, and coercion,  in violation of the Tom Banes Civil Rights Act, with this Court having supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## Thirty First Cause of Action

## Violation of Article 1, Section 23 of the Florida State Constitution

## "The Right to Privacy"

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants acting individually and collectively violated Plaintiff's right to privacy as enshrined in the Florida State Constitution, which states "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life..." with this Court having

supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

### Thirty Second Cause of Action

### Violation of 5th Amendment Rights: "The Takings Clause"

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants acting individually and collectively violated The Takings Clause of the Fifth Amendment to the United States Constitution which states: "Nor shall private property be taken for public use, without just compensation."

### Thirty Third Cause of Action: Abuse of Process

Plaintiff realleges and incorporates all relevant information in this Complaint. Plaintiff alleges that Defendants acting individually and collectively engaged in abuse of process, by sending false demand notices and affidavits to Plaintiff's bank in order to drain Plaintiff's bank account, and creating other false affidavits and communications. These demand notices and other notices had no basis in law and were utilized with malice solely to harass, oppress, and abuse Plaintiff and unlawfully deprive him of his funds and his civil rights.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for relief as follows:

    1. Declaratory relief stating that the seizure practices of the California Franchise Tax Board do not comply with protections enumerated in the 5th Amendment to the United States Constitution guaranteeing due process of law.

    2.  Declaratory relief stating that the seizure practices of the California Franchise Tax Board do not comply with protections enumerated in the 4th Amendment of the United States Constitution guaranteeing freedom from unreasonable search and seizure.

    3. Declaratory relief stating that the seizure practices of the California Franchise Tax Board do not comply with safeguards enumerated in the 14th Amendment of the United States Constitution guaranteeing due process of law.

    4. Injunctive relief recommending that the seizure practices of the California Franchise Tax Board be reviewed by the U.S. Department of Justice, Civil Rights Division.

    5. A permanent injunction enjoining any and all seizure activities by the California Franchise Tax Board, until such time as the California Franchise Tax Board may be certified to be in full compliance with civil rights protections guaranteed by the 4th, 5th, and 14th Amendments of the U.S. Constitution.

6. Declaratory relief stating that the California Franchise Tax Board does not enjoy sovereign immunity under the 11th Amendment, based on its extensive physical presence of offices and activities outside the State of California.

7. Declaratory relief stating that the practices of the California Office of Tax Appeals as established by California Government Code § 15670  do not comply with the protections enumerated in the 5th Amendment of the United States Constitution guaranteeing due process of law.

8. Declaratory relief stating that the practices of the California Office of Tax Appeals as established by California Government Code § 15670 do not comply with the safeguards enumerated in the 14th Amendment of the United States Constitution guaranteeing due process of law.

9. Declaratory relief stating that the California Franchise Tax Board and its officers, agents, and employees have engaged in a pattern and practice of "domestic terrorism" as defined by 18 U.S. Code § 2331(5).

10. A permanent injunction against the California Office of Tax Appeals enjoining hearings and decisions of any type, based on noncompliance with the 5th and 14th Amendments of the U.S. Constitution.

11. A declaratory judgement against Article XIII, Section 32 of the California State Constitution, finding it does not comply with the requirements

236

of due process guaranteed by the 5th and 14th Amendments to the U.S. Constitution.

12. A declaratory judgement against Article XIII, Section 32 of the California State Constitution, declaring it in violation of the 8th Amendment of the U.S. Constitution regarding excessive fines.

13. A declaratory judgement against Article XIII, Section 32 of the California State Constitution, finding it to be a Bill of Attainder in violation of Article 1, Section 10 of the U.S. Constitution.

14. A declatory judgement finding that the FTB's failure to appoint a Taxpayer Rights Advocate as required by law has deprived citizens of substantial civil rights and protections.

15. A declaratory judgement confirming that the practice of confiscating monies under a "pay first" tax system is inherently unconstitutional when it would impose a substantial hardship or deprive the citizen of the funds necessary for the maintenance of life, noting that such seizures occur prior to any due process having been afforded the citizen.

16. A permanent injunction ordering the State of California to return all of Plaintiff's property in its possession to the Plaintiff, with interest calculated pursuant to 28 U.S. Code § 1961.

237

17. An award in favor of Plaintiff against each Defendant individually of $12 million dollars for each indivdiual Cause of Action so awardable, for damages sustained as a result of Defendants' wrongdoing, including consequental, punitive, and incidental damages, to include fees and costs, or such amount to be established at trial with such damages trebled under 18 U.S. Code § 1964  (the "Racketeer Influcenced and Corrupt Organizations Act") Section (c) which states that a plaintiff in a civil RICO action "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

18. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), plaintiff Eric Gerow hereby demands a trial by jury on all issues so triable by a jury in this action.

DATED this 12th day of June 2023

Respectfully submitted,

Eric Gerow, In Propria Persona

3432 US-19 #6, Holiday, FL 34691

Tel. 917-648-4710

Email: arzo101@protonmail.com

Signed:  /s/ Eric Gerow