## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ERIC GEROW,**

      **Plaintiff,**

**v.**                                                        **Case No: 8:22-cv-2976-MSS-JSS**

**GAVIN NEWSOM, et al.,**

      **Defendants.**

_____

### ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant California State Auditor's Motion to Dismiss the Second Amended Complaint, (Dkt. 60), and Plaintiff's response thereto. (Dkt. 66) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendant's Motion.

## I.     BACKGROUND

On October 16, 2023, Plaintiff filed the Second Amended Complaint in this action against 51 named defendants, as well as "Jane or John Does 1–100." (Dkt. 51) Plaintiff, proceeding *pro se*, alleges Defendants participated in a conspiracy to seize Plaintiff's property unlawfully on the basis that Plaintiff failed to pay California state taxes. (Id.) Specifically, Plaintiff alleges that in 2015 the California Franchise Tax Board (the "FTB") "carried out an illegal interstate seizure of Plaintiff's bank account, with no warning or due process." (Id. at ¶ 167) Plaintiff alleges that at the time of the

seizure, Plaintiff had not lived or worked in California for over a decade, and that the taxes the FTB assessed against Plaintiff were based on an "imputed California earned income." (Id. at ¶¶ 168, 170) Plaintiff alleges he "made extensive good-faith attempts to attempt to resolve the unlawful seizure with the FTB and seek return of his money." (Id. at ¶ 169)

> In 2018 after many fruitless attempts to reason with the FTB and obtain his illegally seized funds, Plaintiff contacted elected representatives and law enforcement to file a complaint about the unlawful FTB seizure. Shortly after Plaintiff filed these complaints the FTB again emptied Plaintiff's bank account for a second time to the last penny.

(Id. at ¶ 175) Plaintiff does not allege he ever filed a claim for refund against the FTB according to the procedures outlined in Cal. Rev. & Tax. Code §§ 19381–19410 (2024).

Additionally, Plaintiff alleges generally that Defendants "conspired with each other to begin a campaign of harassment of Plaintiff . . . to terrorize Plaintiff into silence, to retaliate against Plaintiff for filing complaints, and to bully Plaintiff into abandoning his legitimate complaints and his unlawfully seized funds." (Dkt. 51 at ¶ 182)

Plaintiff names the California State Auditor ("Defendant CSA") as a defendant in this action. (Id.) Plaintiff asserts six claims against Defendant CSA: violation of Florida's RICO Act; violation of 18 U.S.C. § 241; violation of 18 U.S.C. §§ 1961–68; violation of 18 U.S.C. § 371; negligent infliction of emotional distress; and fraud. In support of these claims, Plaintiff alleges the following facts about Defendant CSA.

Defendant CSA "is a government agency that has a legal mandate to carry out audits of California state government agencies." (Id. at ¶ 98) Specifically, Defendant

CSA is statutorily mandated to audit the FTB but refuses to do so for political reasons. (Id. at ¶¶ 358, 471) Additionally, Defendant CSA maintains a hotline to receive complaints about California state agencies for investigation. (Id. at ¶ 472) Using this hotline, Plaintiff reported his complaints about the FTB to Defendant CSA. (Id. at ¶ 469) He believes "numerous other citizens" also filed complaints about the FTB with Defendant CSA. (Id.) Nonetheless, Defendant CSA ignored these complaints and has never investigated or reported on the FTB's operations. (Id.) "[T]his failure is part of a deliberate conspiracy by Defendants to turn a blind eye to FTB misconduct." (Id. at ¶ 98) Defendant CSA commits gross negligence "for continually refusing to audit" the FTB. (Id. at ¶ 359) "Had the [CSA] conducted a review of [the FTB], many citizens would have been saved from abuse." (Id. at ¶ 471)

Plaintiff alleges Defendant CSA is subject to the personal jurisdiction of this Court under Florida's long-arm statute because Defendant CSA "actively aided and abetted a scheme of illegal cross-border confiscation that they knew was directed at Florida residents." (Id. at ¶ 356)

Defendant CSA filed a motion to dismiss the Second Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## II.   LEGAL STANDARDS

### A. Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b) permits a party to assert various defenses,

including the defense of lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2). In the complaint, a plaintiff must make a *prima facie* showing of personal jurisdiction over a non-resident defendant. See AcryliCon USA, LLC v. Silikal GmbH, 985 F.3d 1350, 1364 (11th Cir. 2021).  "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). "If the plaintiff pleads enough facts to state a prima facie basis for personal jurisdiction, the burden of proof shifts to the defendant to challenge the plaintiff's allegations by affidavits or other pleadings." PROCON USA COLLECTIONS, INC. v. Charnquist, No. 14–cv–02560, 2015 WL 1418757, at *1 (M.D. Fla. Mar. 27, 2015) (citing S.E.C. v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 2006)). "If the defendant sufficiently challenges the plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations set forth in the complaint[.]" Id.

### B. Failure to State a Claim

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must meet an exceedingly low threshold of sufficiency. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560–64 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 545). In light of a motion to dismiss, to evaluate the sufficiency of a complaint a court must accept the well pleaded facts as true and construe them in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

### C. Standing

"The Constitution of the United States limits the subject matter jurisdiction of federal courts to 'Cases' and 'Controversies.'" CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting U.S. Const. Art. III, § 2). "Standing" is the litigant's right to have a court decide the merits of the claims for which he or she seeks relief, and "is an essential . . . part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see also Warth v. Seldin, 422 U.S. 490, 498 (1975). As a threshold procedural matter, a litigant must have standing to invoke the jurisdiction of a federal court. See e.g., Davis v. F.E.C., 554 U.S. 724, 732 (2008). The party invoking federal jurisdiction bears the burden of establishing three elements. Lujan, 504 U.S. at 560. "The plaintiff

must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

## III.   DISCUSSION

### A. Lack of Personal Jurisdiction

Plaintiff fails to establish a *prima facie* case of personal jurisdiction as to Defendant CSA. To determine personal jurisdiction over a non-resident defendant, courts use a two-part analysis. Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). First, the court must determine whether jurisdiction over the defendant is appropriate under the forum state's long-arm statute. Id. Next, the court must decide whether sufficient "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment. Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The "maintenance of the suit" must not "offend traditional notions of fair play and substantial justice." Id. (internal quotations omitted). If the complaint lacks allegations to show jurisdiction is appropriate under either part of the analysis, the plaintiff fails to establish a *prima facie* case of personal jurisdiction.

Florida's long-arm statute provides for both general and specific personal jurisdiction. § 48.193, Fla. Stat. (2023). A court has general personal jurisdiction if the defendant engaged in "substantial and not isolated" activity in Florida. Id. at § 48.193(2). Florida courts have held that "substantial and not isolated activity" means "continuous and systematic general business contact" with Florida. Autonation, Inc.

6

v. Whitlock, 276 F. Supp. 2d 1258, 1262 (S.D. Fla. 2003). On the other hand, a Florida court may exercise specific personal jurisdiction if the defendant deliberately directed activities to Florida and the alleged injury to the plaintiff arises from those activities. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); see also § 48.193(1), Fla. Stat. (2023) (listing acts which, if committed in Florida, give rise to specific personal jurisdiction over the person or entity that committed them).

Plaintiff fails to establish a *prima facie* case of this Court's general personal jurisdiction over Defendant CSA under Florida's long-arm statute. Plaintiff alleges Defendant CSA is subject to Florida's long-arm statute because it "actively aided and abetted a scheme of illegal cross-border confiscation that [it] knew was directed at Florida residents." (Dkt. 51 at ¶ 356) Plaintiff alleges no specific facts to support the conclusion that Defendant CSA is engaged in "continuous and systematic" activity in Florida. Therefore, the complaint contains no allegations to support this Court's general personal jurisdiction over Defendant CSA.

Similarly, Plaintiff fails to establish a *prima facie* case of specific personal jurisdiction because Plaintiff does not allege Defendant CSA purposefully directed any of its activities to Florida. Plaintiff's claim as to Defendant CSA is that it failed to audit the FTB in violation of California law. This inaction, which allegedly establishes Defendant CSA's liability, occurred within California and was directed at another California state agency. According to Plaintiff's allegations, Defendant CSA has not purposefully directed any of its activities to Florida. Therefore, this Court finds Plaintiff fails to establish a *prima facie* case of specific personal jurisdiction under

Florida's long-arm statute as to Defendant CSA. Finding the exercise of neither general nor specific jurisdiction appropriate under the statute, the Court holds Plaintiff fails to satisfy the first part of the analysis regarding whether this Court's exercise of personal jurisdiction is appropriate.

Plaintiff similarly fails to establish Defendant CSA has sufficient minimum contacts with Florida such that this Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. Defendant CSA observes in its motion to dismiss, "[T]he State Auditor's entire purpose," as delineated in the California Statutes, "is to conduct audits and investigations of California state government agencies in California." (Dkt. 60 at 13) Plaintiff's allegations are consistent with this description of Defendant CSA's purpose. (Dkt. 51 at ¶ 98) Based on Plaintiff's own allegations, Defendant CSA has no relationship to Florida. For this reason, Plaintiff fails to establish Defendant CSA has minimum contacts with Florida sufficient to satisfy the Due Process Clause of the Fourteenth Amendment. Therefore, Plaintiff fails to establish a *prima facie* case of this Court's personal jurisdiction over Defendant CSA, and Plaintiff's claims as to Defendant CSA are due to be dismissed without prejudice. See Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1221 (11th Cir. 1999) (noting dismissal for lack of personal jurisdiction without prejudice precludes further litigation in Florida courts).

Assuming, *arguendo*, this Court had personal jurisdiction over Defendant CSA, the Complaint is nonetheless due to be dismissed for failure to state a claim and for lack of standing.

8

### B. Failure to State a Claim

Plaintiff fails to state a claim for each of the six causes of action he asserts against Defendant CSA.

First, Plaintiff's claim under Florida's RICO statute is insufficiently plead. S.Y. v. Wyndham Hotels & Resorts, Inc., 521 F. Supp. 3d 1173, 1188–90 (M.D. Fla. 2021) (citations omitted) (noting the elements of a civil RICO claim Florida's statute are (1) conduct or participation in an enterprise, (2) a pattern of criminal activity, and (3) a proximate causal connection between the RICO violations and the plaintiff's injury). Plaintiff does not allege Defendant CSA engaged in any criminal activity. Rather, Plaintiff repeatedly alleges Defendant CSA "deliberately [looked] the other way[,]" in spite of a statutory mandate to audit the FTB. Nowhere, however, does Plaintiff allege Defendant CSA violated a criminal statute. For these reasons, Plaintiff's claims that Defendant CSA violated Florida's RICO Act must be dismissed.

Second, Plaintiff fails to state a claim under 18 U.S.C. §§ 241, 371, and 1961–68. Plaintiff alleges no facts to state a plausible claim that Defendant CSA conspired to intimidate him in the free exercise of a federal right or privilege in violation of § 241, or that Defendant CSA engaged in "racketeering activity" as defined in § 1961. Section 371 prohibits persons from conspiring to defraud or commit an offense against the United States and is thus inapplicable to Plaintiff's case. For these reasons, Plaintiff's claims that Defendant CSA violated 18 U.S.C. §§ 241, 371, and 1961–68 must be dismissed.

Next, Plaintiff fails to state a claim of negligent infliction of emotional distress.

Generally, to recover for the negligent infliction of emotional distress under Florida law, "the plaintiff must show that the emotional distress flows from physical injuries sustained in an impact." Corbin v. Prummell, 655 F. Supp. 3d 1143, 1167 (M.D. Fla. 2023) (quoting Elliot v. Elliot, 58 So. 3d 878, 880 (Fla. 1st DCA 2011)). Florida law also, however, allows for recovery on a claim of negligent infliction of emotional distress if a person suffers a physical injury caused by emotional distress arising from witnessing the death or injury of a loved one. Id. (citing Zell v. Meek, 665 So. 2d 1048, 1050 (Fla. 1995)). Accordingly, the elements of a negligent infliction of emotional distress claim are: "(1) the plaintiff must suffer a discernable physical injury; (2) the physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person." LeGrande v. Emmanuel, 889 So. 2d 991, 995 (Fla. 3d DCA 2004). Plaintiff does not allege that he has suffered any impact or that his emotional distress is manifested by any physical injury. No incident occurred in which a person closely related to Plaintiff was injured. He fails to plead sufficient facts to state the elements of a claim of negligent infliction of emotional distress. Therefore, this claim should be dismissed.

Similarly, Plaintiff fails to allege facts to state a claim of fraud. Under Florida law, the elements of common law fraud are: (1) a false statement of material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another's reliance on it; and (4) reliance on the representation to the injury of the party acting in

reliance. Knight v. E.F. Hutton & Co., 750 F. Supp. 1109, 1114 (M.D. Fla. 1990); Wadlington v. Cont'l Med. Servs., Inc., 907 So. 2d 631, 632 (Fla. 4th DCA 2005). Plaintiff alleges no facts to support a finding that any of these elements are satisfied. Accordingly, Plaintiff's fraud claim is due to be dismissed for failure to state a claim.

The Court finds Plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6) for each of the claims in the Complaint. The Complaint, therefore, would be due to be dismissed even if the Court had personal jurisdiction over Defendant CSA.

### C. Standing

Additionally, the Court likewise would question whether Plaintiff has standing to litigate his claims against Defendant CSA. To establish the injury in fact element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. (quoting Lujan, 504 U.S. at 560). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way," and is not "'undifferentiated.'" Id. at 339 (citations omitted).  An injury is concrete when it is "real," not "abstract."  Id. at 340. Intangible injuries may be concrete.  Id. To establish the second element of standing, the alleged injury must be "fairly traceable to the challenged conduct of the defendant." Spokeo, 578 U.S. at 338. "[T]here must be a causal connection between the injury and the conduct complained of . . . ." Lujan, 504 U.S. at 560. Finally, to establish the third element of standing, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561 (citations omitted).

The Court gleans two alleged injuries attributable to Defendant CSA from Plaintiff's Second Amended Complaint. First, Plaintiff alleges Defendant CSA violated a statutory mandate to audit the FTB. Second, Plaintiff asserts Defendant CSA's failure to investigate the FTB facilitated the FTB's alleged seizure of his assets without due process. Neither of these alleged injuries appear sufficient to confer standing on Plaintiff.

A plaintiff cannot allege an injury sufficient to satisfy the first element of standing by asserting that the government has not complied with law. See Allen v. Wright, 468 U.S. 737, 754 (1984) (stating the Supreme Court "has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court"). An assertion that the government has acted in violation of the law establishes a generalized injury, not one particular to the plaintiff. Lujan, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."); see also Fairchild v. Hughes, 258 U.S. 126, 129–30 (1922).

Here, Plaintiff alleges Defendant CSA has failed to audit the FTB in violation of California statutes mandating that it do so. (Dkt. 51 at ¶ 358) Plaintiff alleges Defendant's failure to audit the FTB allowed the FTB to engage in misconduct which injured Plaintiff. Assuming state law mandates the CSA audit the FTB, Plaintiff

nonetheless fails to allege an "undifferentiated" injury. <u>Spokeo</u>, 578 U.S. at 339 (citations omitted). Indeed, Plaintiff alleges in the Second Amended Complaint that if Defendant CSA reviewed the FTB's conduct, "many citizens would have been saved from abuse." (Dkt. 51 at ¶ 471) Plaintiff's alleged injury is shared by every person affected by the FTB's alleged misconduct. Therefore, it would appear that Plaintiff fails to allege a concrete and particularized injury sufficient to satisfy the first element of standing as to his claim that Defendant CSA has violated a statutory mandate.

Thus, Plaintiff appears to lack standing to sue Defendant CSA in federal court, and the Second Amended Complaint would be due to be dismissed as to Defendant CSA for this reason as well.

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** Defendant California State Auditor's Motion to Dismiss, (Dkt. 60), is **GRANTED for lack of personal jurisdiction**. The Second Amended Complaint, (Dkt. 51), is **DISMISSED WITHOUT PREJUDICE** as to Defendant CSA.

**DONE and ORDERED** in Tampa, Florida this 2nd day of May 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Party

13